PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2234
_____

ALEJANDRO MISAEL MELENDEZ SARAVIA,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the Board of
Immigration Appeals
(Agency No. A204-490-174)
_____

Argued: June 13, 2018

Before: CHAGARES, GREENBERG and FUENTES,
*Circuit Judges*

(Opinion filed: October 1, 2018)

Gregory Bischoping **[ARGUED]**
University of Pennsylvania Law School
(Admitted pursuant to L.A.R. 46.3)

Stuart T. Steinberg
Thomas J. Miller
Derek J. Brader
Dechert LLP
Cira Centre
2929 Arch St.
Philadelphia, PA 19104

Counsel for Petitioner


Sabatino F. Leo **[ARGUED]**
Chad A. Readler
Anthony P. Nicastro
U.S. Department of Justice
Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

Counsel for Respondent

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

This case concerns the Board of Immigration Appeals' failure to follow precedent set forth by this Court.[1]

Alejandro Misael Melendez Saravia ("Saravia") petitions for review of the Board's decision affirming the Immigration Judge's denial of his application for withholding of removal under 8 U.S.C. § 1231(b)(3)(A) and relief under the Convention Against Torture.[2] Before the Immigration Judge, Saravia argued that he had a well-founded fear of persecution on the basis of his membership in a particular social group. The Immigration Judge found Saravia to be credible, but determined that Saravia failed to corroborate his claim. The Board affirmed the Immigration Judge's decision, and this petition followed.

In *Chukwu v. Attorney General*,[3] we held that an Immigration Judge must "give the applicant notice of what corroboration will be expected and an opportunity to present an explanation if the applicant cannot produce such corroboration."[4] Despite the Board's subsequent contrary

---

[1] *See Abdulai v. Ashcroft*, 239 F.3d 542, 553 (3d Cir. 2001) ("The [Board] is required to follow court of appeals precedent within the geographical confines of the relevant circuit." (citation omitted)).
[2] *See* 8 C.F.R. § 1208.18 (implementing the Convention Against Torture).
[3] 484 F.3d 185 (3d Cir. 2007).
[4] *Id.* at 192.

decision,[5] we remind Immigration Judges in our Circuit that they must follow the requirements of *Chukwu*. We will vacate and remand.

## I.    Facts

Saravia is a native and citizen of El Salvador. In about 1996, when Saravia was five, his mother left for the United States for economic reasons. After this, he lived with his father.

### A.    Saravia's Encounters with MS-13

In 2005, members of MS-13 began trying to recruit Saravia into the gang. He refused, and they beat and threatened him. Before the Immigration Judge, Saravia testified that they kicked him and hit him with fists, but that the injuries were not severe enough for him to go to the hospital. Saravia testified that the gang members threatened Saravia with the murder of his family if he told his father and his father reported the gang to the police. Saravia also testified that after the gang discovered that his mother lived in the United States, they demanded money from him. The gang issued Saravia an ultimatum: either join the gang or pay $15,000. He testified that gang members continued threatening him, leading his father to send Saravia and Saravia's younger sister to live with their mother in Paterson, New Jersey. He entered the United States without inspection sometime in 2006.

---

[5] *Matter of L-A-C-*, 26 I. & N. Dec. 516, 523–24 (B.I.A. 2015) ("Applicants have the burden to establish their claim without prompting from the Immigration Judge.").

Saravia testified that in March of 2011, his cousin, Juan Ramon Hernandez Melendez, was killed in El Salvador by members of MS-13. He testified that Juan was a police officer and that MS-13 had asked Juan for firearms and killed him when he refused. Saravia also testified that eight months after his cousin was killed, members of MS-13 in El Salvador kidnapped another of his cousins, Francisco Hernandez, and brutally tortured him for information about Saravia and Saravia's father. Hernandez was released in December 2011, but then murdered by MS-13 gang members two days later, according to Saravia.

Saravia also testified that he fears returning to El Salvador because a property inherited by his mother has been occupied and seized by MS-13 after his mother, via a cousin of Saravia's in El Salvador, began renting the property to a woman apparently affiliated with MS-13. Saravia testified that MS-13 uses the house for meetings and to torture people, and that he fears that if he returns to El Salvador, the government will assume he is linked to the gang.

In August 2015, MS-13 gang members attacked Saravia's father. He was hospitalized for five days. During his recovery, MS-13 gang members called Saravia's half-brother and threatened to kill Saravia's father and his family if he reported the beating to police. According to Saravia, they added that they would kill Saravia if they found him in El Salvador. Saravia's half-brother then fled to the United States.

**B.     Saravia's Arrest and the Telephone Threats**

In April 2015, Saravia was arrested in New Jersey and charged with aggravated assault, simple assault on a law

5

enforcement officer, resisting arrest by physical force or violence, aggravated assault with a deadly weapon, unlawful possession of a firearm, and unlawful possession of a weapon. These charges, according to Saravia, arose from a domestic misunderstanding and police officers' decision to hit and handcuff him.

Saravia testified that, while he was in police custody, MS-13 gang members called his mother and threatened to kill him if he returned to El Salvador. They stated that they knew he was in police custody and that he was going to be deported back to El Salvador. In May 2015, Saravia entered into a pre-trial intervention program. The charges against him were to be dismissed after a one-year term of probation. However, during his probation, Saravia was arrested for driving under the influence.

### C.     Removal Proceedings Against Saravia

The Department of Homeland Security commenced removal proceedings against Saravia by filing a Notice to Appear with the Immigration Court in Elizabeth, New Jersey. In March 2016, Saravia conceded inadmissibility as charged and all factual allegations in the Notice to Appear. Thereafter, Saravia submitted Form I-859, applying for asylum and withholding of removal.

Saravia testified before the Immigration Judge on November 15, 2016. In the course of Saravia's testimony, the Immigration Judge asked several questions regarding corroboration:

6

JUDGE TO MR. MELENDEZ-SARAVIA

According to your earlier testimony, you stated that a gang member phoned your mother here in the United States while you were incarcerated by the State of New Jersey.

MR. MELENDEZ-SARAVIA TO JUDGE

Yes, I was – when I was detained in 2015.

JUDGE TO MR. MELENDEZ-SARAVIA

Okay. Now – and your mother lives here in the State of New Jersey now, is that right?

MR. MELENDEZ-SARAVIA TO JUDGE

Yes, she lives in Patterson [sic].

. . .

JUDGE TO MR. MELENDEZ-SARAVIA

7

Why hasn't she come here to testify about this threat, this recent threat against you?

MR. MELENDEZ-SARAVIA TO JUDGE

Yes, my mom is in the waiting area. They never told us that they needed her to do that type of declaration.

JUDGE TO MS. AL-QALDA [Melendez Saravia's counsel]

Counsel, do we have a statement from the mother attesting to that element of the claim? I'm not aware of one in the record.

MS. AL-QALDA TO JUDGE

I'm not aware of one in the record, Your Honor, as well.

JUDGE TO MS. AL-QALDA

All right.

JUDGE TO MR. MELENDEZ-SARAVIA

You also have a half-brother in the United States, right, who recently came to the United States?

8

MR. MELENDEZ-SARAVIA TO JUDGE

Yes. Right.

JUDGE TO MR. MELENDEZ-SARAVIA

Does he also reside now in the State of New Jersey?

MR. MELENDEZ-SARAVIA TO JUDGE

No, he lives in Boston, Massachusetts.

JUDGE TO MR. MELENDEZ-SARAVIA

Now, according to your testimony he's also aware – he also witnessed recent threats against you from gang members in El Salvador, right?

MR. MELENDEZ-SARAVIA TO JUDGE

Yes.

JUDGE TO MS. AL-QALDA

Counsel, do we have a statement from this percipient witness?

9

MS. AL-QALDA TO JUDGE

We don't.

**JUDGE TO MS. AL-QALDA**

**All right.  Is there any reason why no corroboration was offered from these two fact witnesses?**

MS. AL-QALDA TO JUDGE

Your Honor, there isn't.  We have absolutely no excuse for that, but simply the time constraints to make sure that we were ready for the individual and we were collecting as much of the other documents and having most of the other documents and corroborating evidence translated as well.[6]

After asking whether there were any further questions or witnesses—in context, witnesses immediately available for that proceeding—the Immigration Judge adjourned the proceeding.  The record does not indicate any additional proceedings prior to the Immigration Judge's decision.

In a written decision issued on December 15, 2016, the Immigration Judge denied Saravia's application.  He found

---

[6] A346–47 (emphasis added).

10

Saravia to be a credible witness.[7]  However, he found that Saravia "failed to corroborate [] critical aspects of his claim, including the alleged threats against him personally."[8]  The Immigration Judge acknowledged this Circuit's three-part requirement when finding lack of corroboration, but ruled that, because of the Board's 2015 opinion in *Matter of L-A-C-*,[9] he was not required to give Saravia "advance notice of the specific corroborating evidence necessary to meet [his] burden of proof."[10]

The Immigration Judge found that Saravia was ineligible for asylum because he applied more than one year after entering the United States.

Specifically, the Immigration Judge found that Saravia had not met his burden for withholding of removal because he failed to establish a "particular social group" in the purported group of which he was a member: "young men looked at to be recruited by then MS-13 gang in El Salvador."[11]

Applying *Matter of M-E-V-G-*,[12] the Immigration Judge concluded that Saravia's proposed social group was neither

---

[7] A13 ("After careful consideration of the totality of the circumstances and all relevant factors, the Court finds Respondent credible.").
[8] A14.
[9] 26 I. & N. Dec. 516 (B.I.A. 2015).
[10] *Id.* at 524.
[11] A16.  On appeal, Saravia's counsel defines the group as "young male Salvadorans who were recruited by gangs and refused to join."  Petitioner's Br. at 12.
[12] 26 I. & N. Dec. 227 (B.I.A. 2014).

sufficiently "socially distinct" nor sufficiently particular.  He further denied Convention Against Torture relief because Saravia did not establish the probability that he would be tortured if returned to El Salvador, and because he had not established government participation, consent, or acquiescence to any torture that would occur.

The Board, ignoring supplemental evidence provided by Saravia on appeal (as required by law), affirmed.[13]  In one paragraph, it confused Saravia's nation of origin, repeatedly referring to his experiences in Honduras.  It held that the Immigration Judge properly applied *M-E-V-G-*. This petition for review followed.

## II.    Jurisdiction and Standard of Review

We have jurisdiction to review a final order of the Board dismissing an appeal of an Immigration Judge's denial of an alien's application for withholding of removal and relief under the Convention Against Torture under 8 U.S.C. § 1252(a)(1). We may only consider the reasons provided by the Board,[14] but

---

[13] *See Matter of Fedorenko*, 19 I. & N. Dec. 57, 73–74 & n.10 (B.I.A. 1984) ("[A]ll evidence which is pertinent to determinations made during deportation proceedings, such as the determination of the respondent's eligibility for suspension of deportation, must be adduced in the hearing before the immigration judge.").

[14] *See Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 539 (3d Cir. 2014) ("Because the [Board] did not reach its decision based on this ground, we may not affirm the judgment on this ground.") (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

where the Board "both adopts the findings of the [Immigration Judge] and discusses some of the bases for the [Immigration Judge's] decision, we have authority to review the decisions of both the [Immigration Judge] and the [Board]."[15]  We defer to the administrative findings of fact, which "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."[16]  We review questions of law *de novo*.[17]

## III.  Discussion

Presented with a credible witness, the Immigration Judge found that Saravia failed to sufficiently corroborate his story.  Contrary to our established precedent, the Immigration Judge here failed to provide Saravia with notice and an opportunity to provide that corroboration.  In doing so, the Immigration Judge relied on a decision of the Board that is contrary to the law of this Circuit.  Because Immigration Judges in this Circuit must follow the law of this Circuit, we will vacate and remand for further proceedings.

### A.  The Burden of Asylum and Related Relief

"The burden of establishing eligibility for asylum, withholding of removal, and relief under [the Convention Against Torture] is on the applicant."[18]  Saravia does not

---

[15] *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004) (citing *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004)).

[16] 8 U.S.C. § 1252(b)(4)(B).

[17] *Orabi*, 738 F.3d at 539.

[18] *Toure v. Att'y Gen. of U.S.*, 443 F.3d 310, 317 (3d Cir. 2006) (citing 8 C.F.R. § 208.13(a)).

13

petition this Court for review of the denial of his asylum application. His asylum claim was denied as time-barred, as he did not apply for asylum within one year of entering the United States. Before us, he petitions for review of the denial of his application for withholding of removal and the denial of his application for relief under the Convention Against Torture.

Withholding of removal is relief from removal distinct from asylum, although they are related.[19] To be eligible for withholding of removal, the applicant must "establish that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion."[20] "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."[21] "Withholding of removal does not rely on the perspective of the applicant's well founded fear, but is instead appropriate only if the Attorney General determines that there is a 'clear probability' that the alien's life or freedom would be threatened upon her removal to a particular country."[22]

---

[19] *See, e.g.*, 8 C.F.R. § 208.3(b) ("An asylum application shall be deemed to constitute at the same time an application for withholding of removal . . . ."); *Chukwu v. Att'y Gen. of U.S.*, 484 F.3d 185, 188 (3d Cir. 2007) ("Withholding of removal is a remedy distinct from asylum and confers only the right not to be deported to a particular country, rather than the right to stay in this one.").

[20] 8 C.F.R. § 1208.16(b).

[21] *Id.*

[22] *Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir. 2005) (quoting *INS v. Stevic*, 467 U.S. 407, 412 (1984)).

14

To obtain relief under the Convention Against Torture, the applicant must show "that it is more likely than not that he would be tortured upon return to his country."[23]

The role of corroboration in sustaining an applicant's burden is identical in asylum, withholding of removal, and relief under the Convention Against Torture. That role is defined by two relevant statutory provisions. First, 8 U.S.C. § 1158(b)(1)(B)(ii), as amended by the REAL ID Act of 2005,[24] provides, with respect to asylum:

> The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record. *Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible*

---

[23] *Chukwu*, 484 F.3d at 189 (citing 8 C.F.R. § 1208.16(c)).
[24] Pub. L. No. 109-13, Div. B, Title I, sec. 101, 119 Stat. 305, 310.

*testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.*[25]

This same provision applies to withholding of removal and relief under the Convention Against Torture. 8 U.S.C. § 1231(b)(3)(C) provides that, for the purposes of withholding of removal and relief under the Convention Against Torture, 8 U.S.C. § 1158(b)(1)(B)(ii) and 8 U.S.C. § 1158(b)(1)(B)(iii) describe the manner in which "the trier of fact shall determine whether the alien has sustained the alien's burden of proof."[26]

Second, 8 U.S.C. § 1252(b)(4), as amended by the REAL ID Act, prohibits a court from "revers[ing] a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds, pursuant to subsection (b)(4)(B), that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." [27]

### B.     The *Abdulai* Inquiry

Prior to the passage of the REAL ID Act, we concluded in *Abdulai v. Ashcroft* that the Board's rule requiring applicant corroboration in certain cases was valid in principle, albeit invalidly applied.[28]  Our formulation of the rule, which has come to be known as the "*Abdulai* inquiry" or "*Abdulai*

---

[25] 8 U.S.C. § 1158(b)(1)(B)(ii) (emphasis added).

[26] 8 U.S.C. § 1231(b)(3)(C).

[27] *Toure*, 443 F.3d at 325.

[28] 239 F.3d 542, 554 (3d Cir. 2001).

analysis,"[29] imposes the following obligations on the Immigration Judge when determining that a failure to corroborate undermines the applicant's claim:

> (1) an identification of the facts for which "it is reasonable to expect corroboration;" (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not, (3) an analysis of whether the applicant has adequately explained his or her failure to do so.[30]

*Abdulai*, however, predates the passage of the REAL ID Act of 2005, which, among other things, modified the language of § 1158(b)(1) and § 1252(b)(4). Prior to its amendment by the REAL ID Act, § 1158(b)(1) did not specify the burden of proof to be carried by the applicant, as now codified in § 1158(b)(1)(B)(ii).[31] Further, the REAL ID Act amended § 1252(b)(4) to prohibit a court from "revers[ing] a determination made by a trier of fact with respect to the availability of corroborating evidence," with the exception noted above.[32] Despite the statutory changes, we held in *Toure v. Attorney General of the United States*, that the REAL ID Act

---

[29] *Chukwu*, 484 F.3d at 193 ("The [Immigration Judge] thus failed to satisfy the *Abdulai* analysis before penalizing Chukwu for failing to corroborate his date of membership.").

[30] *Abdulai*, 239 F.3d at 554.

[31] *Toure*, 443 F.3d at 325; REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, Title I, sec. 101(a).

[32] Pub. L. No. 109-13, Div. B, Title I, sec. 101(e).

17

and § 1252(b)(4) specifically do not "alter our rules that (1) an [Immigration Judge] has a duty to develop an applicant's testimony . . . and (2) as a logical predicate to appellate review, the [Board] must adequately explain the reasons for its decisions."[33]  In other words, as we stated in *Chukwu v. Attorney General of the United States*, "we cannot ascertain whether the trier of fact would be compelled to find the evidence unavailable unless the applicant is given a chance to explain why he thinks it is unavailable."[34]

Thus, we recognized, in both *Chukwu* and *Toure*, that satisfying *Abdulai* requires Immigration Judges to "give the applicant notice of what corroboration will be expected and an opportunity to present an explanation if the applicant cannot produce such corroboration" under § 1252(b)(4).[35]  Neither *Chukwu* nor *Toure*, however, considered the amended

---

[33] 443 F.3d at 325.  We note that the Immigration Judge's obligation to develop the record takes on particular importance where a respondent in removal proceedings is not provided counsel.  A respondent has only "the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings."  8 U.S.C. § 1229a(b)(4)(A).  *See Ponce-Levia v. Ashcroft*, 331 F.3d 369, 374 (3d Cir. 2003) ("It is well-established that an alien at an immigration hearing has some form of right to counsel.  It is equally well-settled, though, that 'there is no Sixth Amendment right to counsel in deportation hearings.'") (quoting *Uspango v. Ashcroft*, 289 F.3d 226, 231 (3d Cir. 2002)).

[34] 484 F.3d at 192 (describing reasoning of *Toure*).

[35] *Id.* (citing *Toure*, 443 F.3d at 324).

provisions of § 1158(b)(1)(B)(ii), [36] and in *Matter of L-A-C-*, the Board held that this provision requires neither notice nor an opportunity to corroborate or explain the failure to corroborate.[37] We now consider whether the Immigration Judge's failure to provide Saravia notice and opportunity to corroborate is justified under *Matter of L-A-C-* and § 1158(b)(1)(B)(ii).

### C. The Immigration Judge's Failure to Provide Notice and Opportunity to Corroborate

The Immigration Judge's written decision reflects his reliance on *Matter of L-A-C-*, the Board's decision holding that notice and opportunity to corroborate or explain the failure to corroborate are not required under § 1158(b)(1)(B)(ii). Under *Matter of L-A-C-* and its interpretation of § 1158(b)(1)(B)(ii), the decision of the Immigration Judge understood *Abdulai* to require only an evaluation of "Respondent's reasons for not submitting" corroborating evidence.[38] It held that Saravia's reasons were "inadequate."[39]

That interpretation of § 1158(b)(1)(B)(ii), however, is not reasonable.[40] As noted, the last sentence in § 1158(b)(1)(B)(ii) states that "[w]here the trier of fact

---

[36] *Chukwu*, 484 F.3d at 191 n.2; *Toure*, 443 F.3d at 326 n.9.

[37] *Matter of L-A-C-*, 26 I. & N. Dec. at 523–24 ("Applicants have the burden to establish their claim without prompting from the Immigration Judge.").

[38] A14.

[39] *Id.*

[40] *Cf. Chevron v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain [it]." Whether we construe under § 1252(b)(4)(D) or § 1158(b)(1)(B)(ii), we cannot conclude on review that it was fair to require Saravia to provide further corroboration without telling him so and giving him the opportunity either to supply that evidence or to explain why it was not available. Under any other rule, our review is not meaningful.[41]

That opportunity to supply evidence or explain why it is not available can only occur before the Immigration Judge rules on the applicant's petition. To decide otherwise is illogical temporally and would allow for "gotcha" conclusions in Immigration Judge opinions. "Justice requires that an applicant for asylum be given a meaningful opportunity to establish his or her claim."[42] Therefore, under the law in this Circuit, the Immigration Judge was obligated to provide Saravia with notice and an opportunity to corroborate his claim.

We realize a circuit split exists on the purported ambiguity of the last sentence of § 1158(b)(1)(B)(ii). *Compare, e.g., Gaye v. Lynch*, 788 F.3d 519, 528-30 (6th Cir. 2015) (there is no notice requirement in corroboration cases); *Liu v. Holder*, 575 F.3d 193, 198 (2d Cir. 2009) ("the alien bears the ultimate burden of introducing [corroborating]

---

[41] *See Abdulai*, 239 F.3d at 555; *Chukwu*, 484 F.3d at 192 (citing *Toure*, 443 F.3d at 325).

[42] *Mulanga v. Ashcroft*, 349 F.3d 123, 136 (3d Cir. 2003) (quoting *Senathirajah*, 157 F.3d at 221).

evidence without prompting from the IJ"); and *Rapheal v. Mukasey*, 533 F.3d 521, 530 (7th Cir. 2008) (same), *with Ren v. Holder* 648 F.3d 1079, 1091-92 (9th Cir. 2011) ("[T]he statute [§ 1158(b)(1)(B)(ii)] is clear. An applicant must be given notice of the corroboration required, and an opportunity to either provide that corroboration or explain why he cannot do so."); *accord Zhi v. Holder*, 751 F.3d 1088, 1095 (9th Cir. 2014).

While our result aligns with *Ren*, our rule derives principally from the fact that we cannot have meaningful judicial review without giving the applicant notice and an opportunity to corroborate. *See Chukwu*, 484 F.3d at 192; *Toure*, 443 F.3d at 325; *see generally Reed* at 562-66. The record here reflects that the Immigration Judge did not give Saravia notice or an opportunity to provide corroborating evidence or explain its unavailability. At most, Saravia was given the opportunity to explain, through counsel, why he *had not* submitted corroborating evidence from his mother and half-brother.[43] The Immigration Judge asked "[i]s there any reason why no corroboration was offered from [Saravia's mother and half-brother]?"[44]

The Immigration Judge's question does not bear on the requirements of *Chukwu*, *Toure*, and *Abdulai*. Whether Saravia *did* not corroborate his testimony is a question entirely different from whether he *could* not corroborate his testimony.

---

[43] There appears to have been no previous discussion, let alone notice, of Saravia's failure to corroborate his claim of gang violence in El Salvador. The Immigration Judge marked a 2015 State Department report into the record.
[44] A347.

21

We have clarified, in *Chukwu* and *Toure*, that *Abdulai* is not simply an inquiry into why an applicant submitted certain things into evidence and not others, but whether evidence corroborating an applicant's testimony is available. For an applicant to provide an explanation "if he cannot produce" corroboration,[45] he must be provided an opportunity to produce it. The decision of the Board is inconsistent with the law of this Circuit.[46]

In fact, as the Immigration Judge noted when asking why Saravia's mother had not testified, Saravia's mother was outside in the waiting area during the proceedings. Saravia stated that "[t]hey never told us that they needed her to do that type of declaration."[47] Saravia's half-brother was in Boston at the time Saravia testified before the Immigration Judge. In this case, it appears that Saravia, through counsel, did assert that corroboration was available but had not been submitted due to constraints of time and resources. Saravia appears to have attempted to submit some corroborating evidence on appeal before the Board. Although that is an improper venue to submit new evidence,[48] it was also improper for the Immigration Judge to deny Saravia notice and an opportunity to produce the corroboration of his claims or an opportunity to explain his failure if he could not do so.

---

[45] *Chukwu*, 484 F.3d at 192 (citing *Toure*, 443 F.3d at 324).

[46] *See Abdulai*, 239 F.3d at 553 ("The [Board] is required to follow court of appeals precedent within the geographical confines of the relevant circuit." (citation omitted)).

[47] A346.

[48] *See Matter of Fedorenko*, 19 I. & N. Dec. 57, 73–74 & n.10 (B.I.A. 1984).

We do not reach the merits of Saravia's application, nor do we opine on the potential effect of intervening law on those merits.[49] Because "it is impossible for us to determine whether 'a reasonable trier of fact [would be] compelled to conclude such corroborating evidence is unavailable' unless a petitioner is given the opportunity to testify as to its availability,"[50] we will vacate and remand for a new corroboration determination.[51]

For the foregoing reasons, Saravia's petition is granted and the order of the Board of Immigration Appeals is vacated. This case is remanded for further proceedings consistent with this opinion.

---

[49] *See Matter of A-B-*, 27 I. & N. Dec. 316, 320 (A.G. 2018) ("Generally, claims by aliens pertaining to domestic violence or gang violence perpetrated by non-governmental actors will not qualify for asylum."); *S.E.R.L. v. Att'y Gen. of U.S.*, 894 F.3d 535, 549–55 (3d Cir. 2018) (granting *Chevron* deference to the Board's revised "particularity" and "social distinction" analysis of particular social group).

[50] *Toure*, 443 F.3d at 325 (quoting 8 U.S.C. § 1252(b)(4)(D)).

[51] *See id.* (remanding for new corroboration determination).