**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1790
_____

ABEL PEREZ BORGES,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(Agency No. A216-282-345)
Immigration Judge:  Kuyomars Q. Golparvar
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 27, 2020
_____

Before:  CHAGARES, RESTREPO, and BIBAS, Circuit Judges.

(Opinion Filed: January 30, 2020)

_____

OPINION*
_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Abel Perez-Borges[1] petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") denial of his applications for asylum and withholding of removal and rejecting his argument that he is entitled to relief under the Cuban Adjustment Act ("CAA"). Perez-Borges also contends that he should have been granted parole. For the following reasons, we will deny the petition.

I.

We write for the parties and so recount only the facts necessary to our decision. Perez-Borges is a Cuban national who arrived in the United States on December 16, 2017. The Department of Homeland Security placed him in expedited removal proceedings and issued a Notice to Appear ("NTA") charging him with removability. Perez-Borges requested asylum, withholding of removal, and deferral of removal under the Convention Against Torture ("CAT").[2]

At a hearing before the IJ on August 13, 2018, Perez-Borges's testimony contained a number of inconsistencies and statements inconsistent with his asylum application. He testified that he feared returning to Cuba because he refused to join the military and refused to join the Communist Party. He stated that he was a trained pilot and that military service is compulsory in order to become a pilot in Cuba. He testified

---

[1] Although Petitioner's name is not hyphenated on our docket and is only sporadically hyphenated in the record, we hyphenate it here consistent with how it appears in his briefing before our Court. See, e.g., Perez-Borges Br. 4.

[2] The BIA concluded that Perez-Borges waived his right to challenge the IJ's denial of relief under the CAT, and Perez-Borges does not contest that ruling here.

2

that he had attended one year of military school, then attended a second year at "another school like a civil school." Administrative Record ("A.R.") 101. He also stated that he objected when the director of his school informed him that he was required to join the military and, as punishment, Perez-Borges was sent to work for an "agriculture aviation company." A.R. 104–06. But he also said that he could avoid compulsory military service because he attended the military academy.

Once, Perez-Borges was detained for about twenty-four hours by the Cuban police, who allegedly interrogated him and threatened him and his family. He claimed that the police detained him because he applied for a visa to travel to Mexico. In the course of this incident, the police purportedly told him that he could not fly anymore. In his asylum application, Perez-Borges claimed that he was physically and mentally tortured, but at the hearing he testified that he did not suffer any physical harm during his detention.

Perez-Borges also gave conflicting testimony about being summoned by Cuba's civil aviation authority. His testimony included inconsistent stories about "citations" and the relevant dates of those citations. A.R. 135–37. He vacillated between describing the citations as punishments, as official summonses, or as cautionary notices. He described one instance where, in response to a citation, he reported to a police station, and he was told not to go to any area in Cuba where he could leave the country or access the Internet. He then described two more "citation" incidents, one of which, he claimed, resulted in his losing his flight privileges. He also testified to being harassed by the Cuban government after this citation.

3

Perez-Borges claimed to have a child with his first wife, to whom he is not legally married. Yet, he also said that they divorced in the beginning of 2016 because "the government was bothering" his wife. A.R. 113. He testified that he is legally married to a Mexican woman, whom he married as a way of escaping Cuba. He mixed up the dates of when he was married to each woman.

Perez-Borges testified that, in April 2017, he left Cuba to reside in Mexico with his second wife. He speculated that the Cuban government allowed him to travel because they expected him to return. He claimed that he then returned to Cuba because his second wife's cousin was threatening his family. In October 2017, he traveled to Mexico again, following yet another citation. Perez-Borges then traveled to the United States, where he presented himself to immigration authorities.

Based on this testimony, the IJ found Perez-Borges not credible and denied his applications for relief. The IJ noted that Perez-Borges's hearing testimony was inconsistent on many topics, including his citations, his refusal to serve in the military, relevant dates and times, including those related to his two marriages, and why he returned to Cuba if he feared for his safety. And in his asylum application, Perez-Borges claimed that he was physically and mentally tortured, but at the hearing he testified that he was not physically harmed. Further, the IJ noted "substantial and material" omissions in his testimony. A.R. 64. Alternatively, the IJ found that Perez-Borges could not show past persecution or a likelihood of future persecution, or that it would be more likely than not that he would be tortured if he returned to Cuba.

4

The BIA affirmed on the same grounds. The BIA also rejected Perez-Borges's argument — raised for the first time on appeal — that he was eligible for relief under the CAA. The BIA noted that Perez-Borges did not submit any additional applications for relief and presented no evidence that he is eligible for status adjustment under the CAA.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a) to review the BIA's order. We generally only consider the reasoning offered by the BIA, but because the BIA adopted the IJ's findings and discussed the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA. Saravia v. Att'y Gen., 905 F.3d 729, 734 (3d Cir. 2018).

We must uphold factual determinations as to asylum and withholding of removal if they are "supported by substantial evidence from the record considered as a whole." Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). Under that standard, "we will reverse based on a factual error only if any reasonable fact-finder would be 'compelled to conclude otherwise.'" Id. (quoting 8 U.S.C. § 1252(b)(4)(B)). We review adverse credibility determinations under the same deferential standard. Kaita v. Att'y Gen., 522 F.3d 288, 296 (3d Cir. 2008).

## III.

At the outset, an applicant for relief from removal must be credible. 8 U.S.C. § 1158(b)(1)(B)(ii). An IJ determines credibility based on the "totality of the circumstances . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." Id. § 1158(b)(1)(B)(iii). To be eligible for

5

asylum, an applicant must show past "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" in the country of removal. Id. § 1101(a)(42)(A). Withholding of removal is subject to a higher standard: an alien must demonstrate that there is a "clear probability" of persecution on account of a protected ground. Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir. 1998) (quotation marks omitted). "Persecution" is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Camara v. Att'y Gen., 580 F.3d 196, 202 (3d Cir. 2009) (quoting Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993)).

The IJ's finding that Perez-Borges is not credible is supported by substantial evidence in the record. The IJ noted a number of unexplained material omissions and inconsistencies in Perez-Borges's story with respect to his military service, his marriages, and his purported torture by Cuban security forces, among other things.

Alternatively, the record supports the IJ's and the BIA's conclusion that Perez-Borges cannot demonstrate either past persecution or a likelihood of future persecution. Perez-Borges was briefly detained once, and although the police threatened his family, he was never physically harmed. Nothing else in the record points to past or likely future persecution.

Finally, Perez-Borges argues that U.S. Immigration and Customs Enforcement ("ICE") should have granted him parole and that he is eligible for status adjustment under the CAA. Neither argument is availing. First, we lack jurisdiction to hear Perez-Borges's challenge to ICE's denial of parole, which is a decision "in the discretion" of

6

the Secretary of Homeland Security.  8 U.S.C. § 1252(a)(2)(B).  Second, as the BIA noted, Perez-Borges did not submit any evidence or argument to show that he is facially eligible for relief under the CAA.

## IV.

For the foregoing reasons, we will deny the petition for review.