**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 21-1729 & 21-3325
_____

ARCKANGE SAINT FORD,

Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA,

Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A209-873-543)
Immigration Judge: Mirlande Tadal

Argued on April 13, 2022

Before:  AMBRO, BIBAS, and ROTH, Circuit Judges

(Opinion filed May 16, 2022)

Robert A. Painter                    **(ARGUED)**
American Friends Service Committee
Immigration Rights Program
570 Broad Street
Suite 1001
Newark, NJ 07102

          Counsel for Petitioner

Christina R. Ziedan                  **(ARGUED)**
Mona M. Yousif
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

          Counsel for Respondent

————————

OPINION OF THE COURT

————————

**ROTH**, Circuit Judge:

The need for effective assistance of counsel applies in immigration law just as it does in criminal law. Aliens, many of whom do not speak English and some of whom are detained before their immigration hearings, can be particularly susceptible to the consequences of ineffective lawyers.

2

Petitioner Arckange Saint Ford paid a lawyer to represent him in removal proceedings, but Saint Ford's requests for relief from deportation were denied after the lawyer failed to present important and easily available evidence going to the heart of Saint Ford's claims. Saint Ford retained new counsel, and his new lawyer asked the Board of Immigration Appeals to reopen his case because of his former attorney's ineffective assistance. The Board declined to do so. Because Saint Ford presents a meritorious ineffective-assistance claim, we will vacate the Board's decision and remand.

## I.    **Background**[1]

Saint Ford, a Haitian national, became involved in Haitian national politics in 2012 by joining the opposition political party, *Platform Petit Dessalines* (PPD). He believed the ruling political party in Haiti, the *Haitian Tet Kale Party* (PHTK), and its leader, then-President Joseph Martelly, were corrupt and involved in human rights abuses. Between June 2013 and June 2014, Saint Ford received anonymous telephone calls threatening that he would become a "victim" if he did not leave the PPD and join the PHTK.[2] Although Saint Ford did not know the identity of the callers, he testified that they told him he should join the PHTK, "and that's how [he] knew that

---

[1] The factual background is drawn from the transcript of Saint Ford's individual removal hearing before the Immigration Judge, the Immigration Judge's and Board of Immigration Appeals' decisions, and evidentiary attachments to Saint Ford's administrative filings. Citations to the Administrative Record refer to the record Saint Ford submitted in support of his second appeal, No. 21-3325.

[2] AR 146 at ¶¶ 8, 10; 604–05.

they were members of the PHTK Party."[3]

In July 2014, armed men encircled Saint Ford's home and began shooting into it. They then set it on fire and burned it down. Saint Ford was not in the house during the assault; he had fled a few days earlier, fearing for his safety. He reported the attack to Haitian authorities, and investigators came to his home the next day. Investigators confirmed that Saint Ford's home "was completely burnet [*sic*] out" and interviewed Saint Ford's neighbor who witnessed the attack.[4] Haitian authorities never determined who attacked Saint Ford's home. After the attack, Saint Ford's neighbor "advised him to leave the area in order to save his life and that of his family."[5]

Saint Ford fled Haiti a few weeks later: first to the Dominican Republic, then to Brazil, and finally to the United States. Later the United States began removal proceedings against Saint Ford, claiming he was in the country without a valid travel or entry document.

Saint Ford hired an attorney to represent him at his removal hearing before an Immigration Judge (IJ). Through that attorney, he conceded removability. However, the attorney prepared and submitted a Form I-589 application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). After preparing the Form I-589, Saint Ford and the attorney had little contact. Saint Ford stated former counsel "never reviewed the application with me or told me what it said."[6] Saint Ford also stated the attorney

---

[3] AR 604.
[4] AR 743.
[5] AR 637.
[6] AR 203 at ¶ 14.

"never prepared me for my final hearing" before the IJ.[7]

The attorney provided scant documentary evidence to support Saint Ford's application:  a few letters from Saint Ford's neighbors, a one-page police report memorializing the investigation into the attack on Saint Ford's home, his PPD membership card, and an attestation confirming his PPD membership.  Shortly before the IJ hearing, the attorney submitted the Haiti 2019 Human Rights Report.  That 2019 State Department Human Rights Report contained no mention of either the PPD or the PHTK.

During Saint Ford's hearing, the IJ repeatedly asked the attorney about record evidence related to the PPD. The IJ specifically asked the attorney if he had submitted any documents attesting to the history and existence of PPD as a political party and PPD's platform.  The IJ explained to the attorney that Saint Ford's PPD membership card was "not sufficient to establish that there is such a party in existence," and continued to ask if former counsel had "any literature about the party[.]  When it was formed, the leaders and whether – and the, the status of the party in Haiti, whether it's still in existence."[8]  Eventually, the attorney admitted he did not submit any documents about the PPD.

The IJ denied relief on all claims.[9]  Although she found

---

[7] AR at 204 at ¶ 22.

[8] AR 609–10.

[9] The IJ concluded Saint Ford was statutorily ineligible to apply for asylum because he filed his asylum application outside the

5

that Saint Ford was credible and that he had provided sufficient documentary evidence to corroborate his testimony, the IJ concluded that Saint Ford "submitted no objective evidence" to help meet his burden in proving that he was harassed or persecuted on account of his political opinion by members of the PHTK.[10] The IJ determined that "the record does not support [Saint Ford's] conclusion" that he would be killed in Haiti because the PHTK was still in power, as "[t]here was no evidence presented in the record that members of the political party of Petit Desalin are systematically targeted and persecuted in Haiti on account of their membership [i]n said party."[11] Further, the IJ found that there was no evidence presented that Saint Ford's fear of persecution upon his return to Haiti was reasonable.

After the IJ denied Saint Ford's claims, Saint Ford retained new counsel and appealed to the Board of Immigration Appeals. The Board affirmed the IJ's decision. Saint Ford appealed to the Court of Appeals,[12] and then moved the Board to reopen his case because, among other reasons, his former counsel provided ineffective assistance. Saint Ford argued that his former counsel "failed to submit the necessary country condition information to corroborate and support" his claims, "did not include in [Saint Ford's] application for relief or elicit during testimony critical information regarding the targeting of Mr. Saint Ford's family members in Haiti, and failed to prepare

---

one-year deadline and did not present argument or evidence demonstrating changed or extraordinary circumstances.

[10] AR 523.

[11] AR 524–25.

[12] That appeal was docketed at No. 21-1729. We consolidated those appeals.

6

[Saint Ford] for his individual hearing."[13]

The Board denied Saint Ford's motion to reopen. It first reasoned that former counsel denied Saint Ford's allegations. Next, the Board concluded that the evidence Saint Ford proffered in support of his motion to reopen did not establish that former counsel had failed to acquire and submit easily obtainable documentary evidence related to the PPD. Then, assuming Saint Ford had established that former counsel provided ineffective assistance, the Board concluded that he did not show he suffered prejudice. It reasoned that "there is no indication that any additional evidence submitted or solicited by [Saint Ford's] former counsel would have enabled [Saint Ford] to establish a clear probability that his life or freedom would be threatened on account of a protected ground in Haiti or that he would be tortured upon his return to Haiti with the consent or acquiescence of a public official."[14]

Saint Ford petitioned for us to review the Board's denial of his motion to reopen.[15] He contends, among other things, that the Board erred in finding that former counsel did not provide ineffective assistance.

---

[13] AR 110.

[14] AR 5.

[15] Saint Ford's first appeal, No. 21-1729, is also before us. Because we will grant relief based on ineffective assistance of counsel, we need not address Saint Ford's underlying claims related to the merits of the IJ's opinion.

7

## II.    **Analysis**[16]

### A. *Ineffective Assistance of Counsel*

Ineffective assistance of counsel can deny an alien due process if it prevents the alien from reasonably presenting his case.[17]  We apply a two-part test to evaluate error and prejudice:  (1) would competent counsel have acted otherwise, and, if so, (2) whether the alien was prejudiced by counsel's performance.[18]  The first prong, ineffectiveness, requires the alien to demonstrate that his counsel's conduct was not an "objectively reasonable tactical decision."[19]  The second prong, prejudice, requires the alien to demonstrate that there was a "'reasonable probability' that 'the IJ would not have entered an order of removal absent counsel's errors.'"[20]  The

---

[16] The Board had jurisdiction over Saint Ford's motion to reopen proceedings in a case in which the Board had rendered a decision under 8 C.F.R. § 1003.2(g)(2)(i).  We have jurisdiction over his petition for review under 8 U.S.C. §§ 1252(a)(1), (b)(6).

[17] *See, e.g.*, *Rranci v. Att'y Gen. of U.S.*, 540 F.3d 165, 175 (3d Cir. 2008).

[18] *Id.*  An alien must also meet certain procedural requirements set forth by the Board, but the government does not dispute that Saint Ford satisfied those requirements here.

[19] *Mena-Flores v. Holder*, 776 F.3d 1152, 1169 (10th Cir. 2015).

[20] *Calderon-Rosas v. Att'y Gen. U.S.*, 957 F.3d 378, 387 (3d Cir. 2020) (quoting *Fadiga v. Att'y Gen. U.S.*, 488 F.3d 142, 159 (3d Cir. 2007)).

alien need not show his counsel's performance did, in fact, alter the outcome of the earlier proceeding, or even that a different outcome was "more likely than not"; we have explained that "reasonable probability" means merely "a 'significant possibility.'"[21]

i.    Ineffectiveness

The Attorney General assumes Saint Ford's former counsel provided ineffective assistance to Saint Ford.  That was wise.  An "attorney's failure to produce easily available evidence supporting a claim for immigration relief falls below the constitutionally required standard of performance."[22]  Saint Ford's former counsel failed to produce sufficient country condition information to support Saint Ford's claims, including any documentation about the PPD (Saint Ford's political party) or the PHTK (Haiti's ruling political party).  That information is easily available online; it is conveniently located on the PPD's website, among other places.  Saint Ford's former counsel provided ineffective assistance when he failed to submit readily accessible, objective information related to the political parties at the heart of Saint Ford's claims.

---

[21] *Id.* (quoting *United States v. Payano*, 930 F.3d 186, 193 n.5 (3d Cir. 2019)).

[22] *Calderon-Rosas*, 957 F.3d at 388 (citing *Fadiga*, 488 F.3d at 162).  We have explained that in "formal removal proceedings, the Fifth Amendment and the immigration laws provide aliens with the right to counsel." *Bonilla v. Sessions*, 891 F.3d 87, 91 (3d Cir. 2018) (citing 8 U.S.C. § 1229a(b)(4); *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 180–81 (3d Cir. 2010)).

The Board erred in crediting Saint Ford's former counsel's denials of wrongdoing.[23] We have explained that facts "presented in the motion to reopen are 'accepted as true unless inherently unbelievable.'"[24] There is nothing inherently unbelievable about Saint Ford's contentions that his former counsel provided ineffective assistance. In fact, his contentions are buttressed by the IJ's hearing transcript, which shows Saint Ford's former counsel failed to include relevant country condition information in the record. The Board's choice to credit former counsel's denials of his own deficiencies was error.

Former counsel's failure to provide *any* objective evidence about the PPD, the PHTK, and Haiti's political conditions cannot reasonably be viewed as a tactical decision. Saint Ford has thus shown that his former counsel did not act in an objectively reasonable manner. Because former counsel provided ineffective assistance, we must now determine

---

[23] In the criminal law ineffective-assistance-of-counsel arena, we have recognized that a lawyer cannot be expected to argue his own ineffective assistance. *See, e.g.*, *United States v. Cocivera*, 104 F.3d 566, 570 (3d Cir. 1996). Our sister circuits agree. *See, e.g.*, *Ciak v. United States*, 59 F.3d 296, 303 (2d Cir. 1995); *United States v. Del Muro*, 87 F.3d 1078, 1080 (9th Cir. 1996); *Harris v. Comm'r, Dep't of Corr.*, 874 F.3d 682, 690 (11th Cir. 2017). It is just as reasonable that in the immigration-law ineffective-assistance-of-counsel context, a lawyer cannot be expected to argue his own ineffective assistance.

[24] *Shardar v. Att'y Gen. of U.S.*, 503 F.3d 308, 313 (3d Cir. 2007) (quoting *Bhasin v. Gonzales*, 423 F.3d 977, 987 (9th Cir. 2005)).

whether Saint Ford suffered prejudice.

ii.    Prejudice

The "familiar standard for prejudice in an ineffective-assistance claim is whether there is a 'reasonable probability' that 'the IJ would not have entered an order of removal absent counsel's errors.'"[25]   This "reasonable probability" standard "does not require a petitioner to show counsel's deficient performance did, in fact, affect the outcome of the case, or even that a different outcome was 'more likely than not'; instead, we have cautioned, 'reasonable probability' means merely a 'significant possibility.'"[26]   To be sure, the Board "need not 'write an exegesis on every contention,'" but "it must 'consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.'"[27]

Here, the Board failed to do so, and its application of our "reasonable probability" standard was wrong.  The Board concluded there was "no indication that any additional evidence submitted or solicited by [Saint Ford's] former counsel would have enabled [Saint Ford] to establish a clear probability that his life or freedom would be threatened on account of a protected ground in Haiti or that he would be tortured upon his return to Haiti with the consent or

---

[25] *Calderon-Rosas*, 957 F.3d at 387 (quoting *Fadiga*, 488 F.3d at 159).

[26] *Id.* (quoting *Payano*, 930 F.3d at 193 n.5).

[27] *Id.* (quoting *Filja v. Gonzales*, 447 F.3d 241, 256 (3d Cir. 2006)).

11

acquiescence of a public official."[28]  As in *Calderon-Rosas* and *Filja*, nothing in the Board's prejudice analysis suggests it sufficiently reviewed Saint Ford's argument.  Like *Calderon-Rosas*, the Board incorrectly applied our "reasonable probability" standard.  In support of his motion to reopen, Saint Ford submitted extensive evidence about the PPD, including a summary of the PPD's political agenda, the participation of the PPD's leader, Haitian Senator Jean-Charles Moise, in opposition activities, and the murder and targeting of PPD members in Haiti.  The Board never mentioned this new evidence—evidence at the core of Saint Ford's claims, and evidence that the IJ repeatedly highlighted as missing both during Saint Ford's hearing and in her decision denying Saint Ford's claims.

Constitutionally adequate counsel would have introduced this readily available evidence. Given the IJ's focus on the lack of information about the PPD, there is a reasonable probability that, if this readily available evidence had been presented, the IJ would have granted protection from removal to Haiti.  For this reason, Saint Ford is entitled to a new hearing on his application.

### B.  Changed Country Conditions

Saint Ford also argued that the Board abused its discretion in finding that there was not a sufficient change in country conditions in Haiti since his individual hearing. Specifically, he contends the Board ignored the "rapidly deteriorating political, security and human rights situation in

---

[28] AR 5.

the country."[29]

The Board "has 'a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim.'"[30] "This duty is heightened for motions to reopen based on changed country conditions."[31] The Board must meaningfully evaluate the evidence submitted in support of the motion to reopen and "may not ignore evidence favorable to the alien, particularly when, as here, the alien's administrative brief expressly calls the [Board's] attention to it."[32]

Here, Saint Ford submitted the following changed country condition information:

- A January 2021 executive decree scheduling a constitutional referendum expressly forbidden by the Haitian constitution;
- Executive decrees issued between November 2020 and May 2021 that redefined domestic terrorism to include protest actions, permitted Haiti's military

---

[29] Pet. Br. at 29.

[30] *Liem v. Att'y Gen. U.S.*, 921 F.3d 388, 396 (3d Cir. 2020) (quoting *Zheng v. Att'y Gen. of U.S.*, 549 F.3d 260, 268 (3d Cir. 2008)).

[31] *Id.*

[32] *Huang v. Att'y Gen. of U.S.*, 620 F.3d 372, 388 (3d Cir. 2010) (citing *Espinosa-Cortez v. Att'y Gen. of U.S.*, 607 F.3d 101, 107 (3d Cir. 2010)).

> to operate domestically, and created a new state-run security apparatus;
>
> - A July 2021 rejection of the acting Haitian president Ariel Henry by Haitian opposition leaders following the assassination of the Haitian president; and,
>
> - Arrest warrants issued in July and August 2021 targeting political opponents after the president's assassination.

These developments preceded and followed the assassination of Haiti's president, Jovenel Moïse, in July 2021. The Board, without discussing any of Saint Ford's newly adduced evidence, concluded that these developments were merely "an incremental increase in political unrest and violence in Haiti."[33] It is unclear to us what, exactly, the Board would consider an adequate change in country conditions if the assassination of the country's leader is simply an "incremental increase" in unrest. This cannot be. We conclude that the Board erred because it failed to explicitly consider the evidence of changed country conditions that Saint Ford submitted, including the assassination of Haiti's president and the resulting crackdown on political opponents and general political chaos.

### III.    Conclusion

For these reasons, we will reverse the Board's denial of Saint Ford's motion to reopen. We will remand this matter to

---

[33] AR 5.

the Board to grant the motion to reopen and remand to the IJ for a new hearing on Saint Ford's application for withholding of removal, eligibility for asylum, and protection under the Convention Against Torture.[34]

---

[34] The government urges that, on remand, the IJ should be permitted to hear only Saint Ford's application for withholding of removal and protection under the Convention Against Torture, arguing Saint Ford himself excluded eligibility for asylum from his motion to the Board because it was barred by the one-year filing deadline for such claims. We disagree. Barring an explicit restriction, IJs have broad jurisdiction on remand to consider "any matters pertinent to that case under the Immigration and Nationality Act (INA) and its implementing regulations." *See Alimbaev v. Att'y Gen. of United States*, 872 F.3d 188, 194 n.7 (3d Cir. 2017); *see also Johnson v. Ashcroft*, 286 F.3d 696, 702–03 (3d Cir. 2002); *Matter of Patel*, 16 I. & N. Dec. 600, 600 (BIA 1978) ("[U]nless the Board qualifies or limits it for a specific purpose, remand is effective for the stated purpose and for consideration of any and all matters which the [IJ] deems appropriate in the exercise of his administrative discretion or which are brought to his attention in compliance with the appropriate regulations."). Here, as Saint Ford notes in his response, 8 U.S.C. 1158(a)(2)(D) sets forth an exception to the one-year filing deadline for asylum claims based on the existence of changed circumstances – an exception for which Saint Ford could conceivably argue he qualifies, considering the evidence he has submitted on this issue. Accordingly, we conclude that the IJ here should not be barred from considering Saint Ford's eligibility for asylum.

Arckange Saint Ford v. Attorney General of the United States of America

Nos. 21-1729 & 21-3325

AMBRO, <u>Circuit Judge</u>, concurring

Arckange Saint Ford will get a second shot at seeking withholding of removal—that's what matters. The majority is remanding because of his former counsel's deficient performance at Saint Ford's removal hearing. I agree with that and concur in full.

But former counsel was not the only one who made significant missteps at the hearing. The Immigration Judge did as well. I therefore would have granted Saint Ford's initial petition for review and remanded on that basis. I write separately to explain these errors in the hope that similar ones will not be made at Saint Ford's new hearing.

\*       \*       \*

An applicant seeking withholding of removal bears the burden of proving it is "more likely than not that his life or freedom would be threatened if returned to his country" because of "race, religion, nationality, membership in a particular social group, or political opinion." *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 214 (3d Cir. 2017) (alterations adopted) (internal quotation marks omitted); 8 U.S.C. § 1231(b)(3)(A). He is rebuttably presumed to satisfy that burden by showing he was persecuted in the past if he

1

demonstrates (1) "he was targeted for mistreatment on account of one of the statutorily-protected grounds," (2) "that the incident, or incidents of mistreatment rise to the level of persecution," and (3) the "persecution was committed by the government or forces the government is either unable or unwilling to control." *Thayalan v. Att'y Gen.*, 997 F.3d 132, 138 (3d Cir. 2021) (internal quotation marks omitted); *Serrano-Alberto*, 859 F.3d at 214. As the majority opinion explains, the IJ found Saint Ford didn't make that showing here.

But where did he fall short? The IJ identified two flaws. First, Saint Ford submitted "no objective evidence to corroborate his claim that he was harassed or persecuted on account of his political opinion." A.R. at 176. And second, he did not support his suspicion that he was threatened by "members of the current government party." *Id.*

Compare those findings with the hearing transcript. Here are just a few soundbites:

> **Saint Ford:** "The government that was in place at the time [was] trying to kill me." *Id.* at 580.

> **Saint Ford:** "I received threatening calls by going against [the government]." *Id.* at 585.

> **Saint Ford:** "[T]he first call, the person didn't give their name, but they said if I didn't leave the political party that I was in and join[] their party, that I would become a victim." *Id.* at 586.

2

> **Saint Ford:** "[T]he members of the government, they wanted to kill me because they realized that they can lose power." *Id.* at 597.

> **Government Attorney:** "[Y]ou told the Court that you really don't know who the individuals are who were harassing you. Correct?"
> **Saint Ford:** "I don't know their names because they never told me who they were. I only know that they would tell me that I should join the PHTK Party and that's how I knew that they were members of the PHTK Party." *Id.* at 604.

> **Government Attorney:** "Okay. So . . . it would be a fair statement to say that the people who harassed you and burned down your house could be members supporting their political party like yourself. Isn't that true?"
> **Saint Ford:** "No, they were members that were part of the party, like, government members in the party." *Id.* at 605–06.

The transcript thus shows Saint Ford testified that (1) "government members in the [PHTK] party" harassed him and burned down his house, and (2) they were threatening him because they wanted him to "leave the political party that [he] was in and join[] their party." *Id.* at 586, 604–06.

And an applicant's testimony is evidence. *See Saravia v. Att'y Gen.*, 905 F.3d 729, 735 (3d Cir. 2018). So, logically, it would be incorrect to say that Saint Ford presented no evidence that he was threatened by government members for his political activity. The IJ, it seems, ruled against Saint Ford *not* because of an absence of evidence in the record, but a lack

3

of *corroborating* evidence supporting Saint Ford's own testimony.

Before diving into whether the IJ was correct to hold Saint Ford at fault for his lack of corroborating evidence, I first note that doing so was—at the very least—internally inconsistent. The IJ's opinion began by finding Saint Ford's testimony credible and stating that he "provided the Court with [a] sufficient amount of documentary evidence to corroborate his testimony." A.R. at 175. Yet on the very next page the IJ contradicted her finding of sufficient corroboration when she denied his application for withholding of removal because he "submitted no objective evidence to *corroborate* his claim that he was harassed or persecuted on account of his political opinion by members of the current government party." *Id.* at 176 (emphasis added). She went on to cite his lack of "objective" or "supporting" evidence three more times as a reason for denying his application. *Id.* at 176, 179. So, no matter what she said at the outset, even a cursory look at the opinion shows the IJ didn't believe Saint Ford actually "corroborate[d] his testimony." *Id*. at 175.

The next question, then, is whether the IJ was right to find Saint Ford needed to present "objective" or "supporting" evidence to corroborate his credible testimony. Perhaps. Congress has said that "[t]he testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, *but only if* the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii) (emphasis added); *id.* § 1231(b)(3)(C) (extending § 1158(b)(1)(B) to applications for withholding of removal). Though the IJ found

4

Saint Ford's testimony credible, his statements about the identity and motives of his harassers might be read as unspecific. For example, though Saint Ford insisted that "government members in the [ruling] party" burned down his house, A.R. at 606, he was not an eyewitness to that event and offered no other basis for this assertion. The IJ was thus not off base to "determine[] that the applicant should provide evidence that corroborates otherwise credible testimony." 8 U.S.C. § 1158(b)(1)(B)(ii).

But the IJ was wrong to stop there and jump straight to denying Saint Ford's application. Congress has recognized corroborating evidence may not always be available to a refugee. *Id.* So when the IJ determines the applicant should corroborate his credible testimony, he must do so "unless the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.* To ensure applicants are not required to provide corroboration when there is none to be offered, our Circuit has adopted a three-step inquiry, known as the "*Abdulai* inquiry," that an IJ must conduct before requiring corroboration. *See Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001). The IJ must "(1) identify the facts for which it is reasonable to expect corroboration; (2) inquire as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not, (3) analyze whether the applicant has adequately explained his or her failure to do so."[1] *Luziga v. Att'y Gen.*, 937 F.3d 244, 255 (3d Cir. 2019)

---

[1] Though we decided *Abdulai* before the REAL ID Act of 2005 amended 8 U.S.C. § 1158(b)(1)(B)(ii), we have later confirmed that the *Abdulai* inquiry continues to apply in our Circuit. *See Saravia*, 905 F.3d at 737; *Luziga*, 937 F.3d at 255; *Blanco v. Att'y Gen.*, 967 F.3d 304, 316 (3d Cir. 2020).

5

(alterations adopted) (internal quotation marks omitted).  This inquiry must occur before the IJ rules on the application so that the applicant has both notice of the need for corroboration and an opportunity to provide it or explain its unavailability. *Saravia*, 905 F.3d at 737–38.

We "strictly enforce this rule." *Luziga*, 937 F.3d at 255. Otherwise the applicant is not given a "meaningful opportunity to establish his or her claim."[2]  *Saravia*, 905 F.3d at 738 (quoting *Mulanga v. Ashcroft*, 349 F.3d 123, 136 (3d Cir. 2003)).  So whenever an IJ fails to develop an applicant's testimony under the *Abdulai* inquiry and "holds the lack of corroboration against the applicant, we vacate and remand." *Luziga*, 937 F.3d at 255 (alterations adopted) (internal quotation marks omitted).

Here, though it was reasonable to request Saint Ford corroborate his testimony about the identity and motive of his harassers, the IJ did not tell him what corroboration she needed or give him a chance to present that evidence.  There is no indication she engaged in the *Abdulai* inquiry as required

---

[2] Failure to conduct this analysis also complicates our review. Congress has instructed that once the IJ rules on the availability of corroborating evidence, we may not reverse unless "a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable."  8 U.S.C. § 1252(b)(4). But without the IJ walking through the *Abdulai* analysis, it is "impossible for us to determine whether a reasonable trier of fact would be compelled to conclude such corroborating evidence is unavailable."  *Saravia*, 905 F.3d at 739 (internal quotation marks omitted).  There would be nothing in the record to inform our review.

before skipping straight to "hold[ing] the lack of corroboration against [Saint Ford]." *Id.* (alterations adopted). She went from first to third across the pitcher's mound. Our *Abdulai* inquiry is there to ensure these important corners aren't cut.

I believe the IJ erred. I thus would have "strictly enforce[d]" our *Abdulai* rule, *see Luziga*, 937 F.3d at 255, granted Saint Ford's initial petition for review, and remanded on that basis.