NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1113

_____

MYNOR YOBANY MARTINEZ-HERNANDEZ,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(BIA No. A077-387-630)
Immigration Judge:  Kuyomars Q. Golparvar
_____

Argued: October 29, 2019

Before:  SMITH, *Chief Judge*, HARDIMAN, and PHIPPS, *Circuit Judges*.

(Filed: March 23, 2020)

_____

OPINION\*
_____

Wayne P. Sachs        **[ARGUED]**
Sachs Law Group
1518 Walnut Street
Suite 610
Philadelphia, PA 19102
        *Counsel for Petitioner*

_____

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Suzanne Nardone   **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*

PHIPPS, *Circuit Judge*.

Mynor Martinez-Hernandez, a native and citizen of Guatemala, unlawfully entered the United States, and the Department of Homeland Security initiated regular removal proceedings against him. Martinez applied for asylum, mandatory withholding of removal, and protection under the Convention Against Torture. Underlying each of those requests for relief is Martinez's assertion that his life would be in jeopardy upon his return to Guatemala. According to Martinez, a cartel will kill him because the cartel's previous leader, Hector Guerra Nova, had extreme animosity toward the Martinez-Palma family, committing multiple acts of violence against them. Martinez also fears for his life because he provided information to United States law enforcement authorities about William Leonidas Alarcon, the current leader of the cartel and cousin of the now-deceased Guerra Nova.

To date, Martinez has not obtained any of the relief he requested. After hearing testimony and receiving evidence, an Immigration Judge ("IJ") sustained the charge of removability and denied Martinez's application, issuing a written decision and order. Martinez then sought administrative review before the Board of Immigration Appeals ("BIA"), which affirmed the IJ's order.

2

Martinez now petitions for review of the BIA's order. Because he seeks review of a final order of removal, we have jurisdiction. *See* 8 U.S.C. § 1252(a). For the reasons below, in reviewing questions of law *de novo* and the factual record for substantial evidence, we will deny Martinez's petition.

I

Martinez argues that the BIA erred by denying his request for asylum. Asylum is a discretionary form of relief, available upon timely request to aliens who qualify as refugees. *See* 8 U.S.C. § 1158(a)(1)-(2), (b)(1)(A); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987).[1] Absent special circumstances not present here, to meet the statutory definition of a "refugee," an alien must be unable or unwilling to avail himself of his home country's protection "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An applicant bears the burden of proving refugee status. *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003); 8 C.F.R. § 208.13(a). And here Martinez argues that he qualifies as a refugee under both formulations: past persecution as well as a well-founded fear of persecution upon his return to his country of nationality.

A

To be eligible for asylum based on past persecution, an applicant must make three showings. Those are (i) an incident or incidents rising to the level of persecution; (ii) on

---

[1] Although the IJ determined that Martinez's application for asylum was untimely, the Government does not raise that defense because the BIA did not rely on that determination as a basis for affirming the decision of the IJ.

3

account of a statutorily protected ground; and (iii) committed by the government or forces that the government is unable or unwilling to control. *See Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (quotation marks and citation omitted). In affirming the IJ's decision, the BIA concluded that there was insufficient evidence to show that Martinez experienced past persecution on account of his family membership. On appeal, Martinez attempts to prove past persecution by relying on the death threat that he received from the cartel in 2006 and by advancing a cumulative persecution theory. Neither prevails.

Martinez contends that he endured past persecution based on unfulfilled death threats that he received from the cartel in 2006. The BIA recognized that Martinez's life was threatened but then agreed with the IJ that those threats were not on account of his family status; rather those threats arose because he declined an invitation to join the cartel. Martinez counters that he was targeted to join the cartel based on his family membership, and therefore, the threats Martinez received for declining the invitation were on account of his family status. Relying on the analysis of the IJ, the BIA instead concluded that the cartel recruited Martinez to increase its ranks. Even so, Martinez rejoins, his burden of proof requires only that he show that his family status provided one central reason for the persecution. *See generally* 8 U.S.C. § 1158(b)(1)(B)(i); *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684-85 (3d Cir. 2015); *see also Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 130 (3d Cir. 2009) (explaining that under the one-central-reason standard, the protected ground must play something more than "an incidental, tangential, or superficial role in persecution"). And to make that showing, Martinez cites

4

his own testimony that the cartel recruited him to prevent him from complaining to authorities about his sister.

Here, the IJ's decision, which the BIA affirmed, provides countervailing factual findings. The IJ accepted both that Martinez's father had been murdered in 2012 as a reprisal for Martinez's sister leaving Guerra Nova and that his mother and sister had been victims of an attempted murder for the same reason in 2013. But the IJ concluded that the cartel threatened Martinez in 2006 solely because he refused to join the cartel and not due to his relationship with his sister. When asked by the IJ whether there was any special reason the cartel recruited Martinez, Martinez's other sister testified that Guerra Nova "just wanted to recruit as many people as he could in his cartel." While the BIA did not specifically reference those findings in affirming the IJ's determination, the BIA did adequately articulate its rationale, and therefore, those factual findings, as part of the administrative record, may be considered in evaluating the BIA's final order. *See Luziga v. Att'y Gen.*, 937 F.3d 244, 251 (3d Cir. 2019) (explaining that the BIA decision is reviewed "generally" while the IJ's determination is reviewed "when necessary"); *Martinez v. Att'y Gen.*, 693 F.3d 408, 411 (3d Cir. 2012); *Dong v. Att'y Gen.*, 638 F.3d 223, 229 n.1 (3d Cir. 2011); *see also* 8 U.S.C. § 1252(b)(4)(A) (generally limiting review to the administrative record); *Dia v. Ashcroft*, 353 F.3d 228, 241 (3d Cir. 2003) (en banc) (allowing judicial review of only the grounds invoked by the agency for its decision). And those factual findings constitute substantial evidence for the BIA's conclusion because a reasonable adjudicator would not be compelled to conclude that Martinez's family status was a central reason for the cartel's recruitment of, and threats to, him. *See* 8 U.S.C. § 1252(b)(4)(B) (providing that "the administrative findings of fact are

5

conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

As a final effort to demonstrate past persecution, Martinez advances a cumulative persecution theory. He argues that the acts of violence against his family combined with the threats he received rise to the level of past persecution. The trouble started in 2005, when Guerra Nova, a powerful cartel leader, kidnapped Martinez's sister at gunpoint, brought her to a hotel, and violently raped her. This began a long, abusive relationship, in which Guerra Nova frequently beat, raped, and threatened to kill Martinez's sister and her entire family. In November 2011, Martinez's sister filed a restraining order against Guerra Nova, which his men later warned her to retract. She did not, and the following day Martinez's father was murdered at a bus stop. The attempted killing of Martinez's mother and sister followed in 2013, after they relocated to a new town.

But in this Circuit, the cumulative persecution theory applies only as a means of proving conduct extreme and severe enough to constitute persecution. *See Cheng v. Att'y Gen.*, 623 F.3d 175, 192-93 (3d Cir. 2010). And here the severity of the acts is not in question; the issue is whether those acts were committed against Martinez on account of family membership. In that vein, even if those acts were aggregated to prove more severe and extreme conduct, that alone could not overcome the evidentiary shortcoming identified above, *viz.*, that Martinez was not threatened on account of his family membership.

## B

As to future persecution, Martinez contends that he has a well-founded fear of persecution on account of the combination of his memberships in two particular social

6

groups: his family and his status as a known confidential informant.[2] *See generally*

8 U.S.C. § 1101(a)(42)(B) (recognizing membership in a particular social group as basis

for refugee status). To be successful, Martinez must demonstrate that upon return to his

native country (i) a reasonable person in his situation would fear persecution and (ii) he

would have a genuine fear of persecution as well. *See Valdiviezo-Galdamez v. Att'y*

*Gen.*, 663 F.3d 582, 590-91 (3d Cir. 2011); *Mulanga v. Ashcroft*, 349 F.3d 123, 132 (3d

Cir. 2003).

In arguing that he has a well-founded fear of future persecution on account of

family membership, Martinez relies on the same facts as he did to establish past

persecution. He cannot prevail on that record. As the BIA recognized, members of

Martinez's family, including his mother and two younger sisters, have resided in

Guatemala without being threatened or harmed for several years. *See Lie v. Ashcroft*,

396 F.3d 530, 537 (3d Cir. 2005) (explaining that "when family members remain in

petitioner's native country without meeting harm, and there is no individualized showing

that petitioner would be singled out for persecution, the reasonableness of a petitioner's

well-founded fear of future persecution is diminished."). And without more evidence, the

BIA did not err in determining that Martinez did not meet his burden of proving a well-

founded fear of future persecution on this basis.

Martinez next contends that he has a well-founded fear of future persecution based

on his known informant activities. The record does not reveal the precise information

---

[2] Although the IJ concluded that Martinez's claimed social group consisting of known law-enforcement informants does not constitute a cognizable particular social group, the Government does not raise that defense here because the BIA did not invoke that ground in affirming the IJ's decision.

7

that Martinez provided to law enforcement or the value, if any, of that information to law enforcement. Nonetheless, Martinez asserts that his informant activities have come to the attention of the whole cartel and that, as a consequence, the cartel will kill him upon his return to Guatemala. Without evaluating whether Martinez genuinely believes that message, the BIA concluded that the evidence was not sufficient to establish that the cartel knew of his informant activities. Martinez testified that, through a barber, the cartel leader, Alarcon, knew that Martinez's family had been asking about Alarcon. He also testified that a cousin of Guerra Nova, the former cartel leader, called Martinez's friend and told him to tell Martinez that he was waiting to kill Martinez upon his return to Guatemala. Martinez's sister, Mayra, likewise testified that cartel members are waiting for her brother to return to Guatemala so they can kill him.

Those accounts rest on multiple layers of hearsay. And although the IJ determined that both Martinez and his sister testified credibly, that finding does not extend to statements by the hearsay declarants.[3] But even crediting those layers of hearsay, the administrative record does not establish that the cartel knew that Martinez was providing information about Alarcon to law enforcement. Without that evidence, Martinez cannot place himself within the particular social group he identifies: *known* informants. For these reasons, a reasonable adjudicator would not be compelled to conclude that the BIA decided incorrectly. *See* 8 U.S.C. § 1252(b)(4)(B).

---

[3] Because those hearsay statements do not constitute "otherwise credible testimony," 8 U.S.C. § 1158(b)(1)(B)(ii), they do not require an opportunity for corroboration, *see* *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001); *see also Saravia v. Att'y Gen.*, 905 F.3d 729, 737-38 (3d Cir. 2018).

8

## II

Martinez's asylum application also constitutes a request for withholding of removal. *See* 8 C.F.R. § 1208.3(b). But the showing needed for withholding of removal requires greater certainty: future persecution must be "more likely than not." *INS v. Cardoza-Fonseca*, 480 U.S. at 430; *see also* 8 U.S.C. § 1231(b)(3)(A).

Under that legal standard, the analysis of a withholding-of-removal petition simplifies in instances, such as the one here, where an alien has been denied asylum for failing to prove a well-founded fear of future prosecution. Without meeting the burden of proof for asylum, Martinez cannot satisfy the more stringent more-likely-than-not standard necessary for withholding of removal. *See Zubeda v. Ashcroft*, 333 F.3d 463, 469-70 (3d Cir. 2003) ("[I]f an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation.").

## III

Martinez also seeks relief under the Convention Against Torture. One of the Convention's requirements is that the feared torture must be carried out directly or indirectly by the government. *See Auguste v. Ridge*, 395 F.3d 123, 130 (3d Cir. 2005) (explaining that the torture must be inflicted "by or at the instigation of or within the consent or acquiescence of a public official or other person acting in an official capacity"); *see also* 8 C.F.R. § 1208.18(a)(1)-(2) (explaining that the purported threats must be carried out "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity"). But here, the

administrative record does not demonstrate that Guatemalan governmental officials would be involved, actively or passively, in any potential torture of Martinez.

Martinez disagrees, arguing that he meets this requirement because the Guatemalan government has no ability to control organized crime groups like this cartel. But the administrative record demonstrates that the Guatemalan government arrested and incarcerated the prior cartel leader, Guerra Nova, and it placed members of Martinez's family into a witness protection program for a period of time. Thus, despite the BIA's terse explanation (that Martinez failed to meaningfully articulate a basis for relief under the Convention), the administrative record contains substantial evidence to deny relief under the Convention.

IV

For the foregoing reasons, we will deny Martinez's petition for review.