**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3510
_____

LUIS FELIPE MENENDEZ MARROQUIN,
                                             Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A206-523-359)
Immigration Judge: David W. Crosland
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 21, 2021
Before:  GREENAWAY, JR., KRAUSE and BIBAS, Circuit Judges

(Opinion filed: November 22, 2021)
_____

## OPINION*

PER CURIAM

Luis Felipe Menendez Marroquin petitions for review of his final order of removal. We will dismiss the petition in part and deny it in remaining part.

## I.

Marroquin is a citizen of Guatemala who entered the United States illegally in 2011. The Government charged him as removable on that basis. Marroquin (through counsel) conceded the charge but applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). He claimed to fear persecution and torture in Guatemala on account of his political activities.

In particular, Marroquin claimed that he was active in a political party referred to as the Unity Party or UNE and that he helped his uncle in his uncle's campaign for mayor of their home town. Marroquin further claimed that his uncle dropped out of the race following threats from the rival Patriot Party. Thereafter, while Marroquin and his uncle attended a wedding in 2011, gunmen fired on the crowd and shot Marroquin four times.

Marroquin attributed the shooting to the Patriot Party, but he provided no evidence to that effect and testified before the Immigration Judge ("IJ") that he did not know who the gunmen were. Marroquin left Guatemala for the United States shortly after recovering

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

from his injuries. He claimed that, since he left, unidentified persons asked his mother in Guatemala for his whereabouts and she received police protection. In addition to his testimony on these points, Marroquin provided some letters from his mother and neighbors corroborating the 2011 shooting (though not its allegedly political dimension or Marroquin's alleged political activities).

The IJ found Marroquin generally credible but denied his applications. First, the IJ concluded that Marroquin's application for asylum was untimely because he did not file it within one year of entering the United States and did not show that the delay was attributable to extraordinary circumstances. See 8 U.S.C. § 1158(a)(2)(B), (D). Second, the IJ concluded that Marroquin failed to prove that he likely faces persecution on account of his political activities as required for his application for withholding. In that regard, the IJ concluded that Marroquin failed to offer reasonably available corroboration (such as a letter from his uncle) of his political activities, the allegedly political aspect of the shooting, or the threats conveyed to his mother. The IJ also noted Marroquin's lack of awareness that the UNE has come to power in Guatemala since he left that country. Finally, the IJ concluded that Marroquin failed to prove that he likely faces torture as required for his application under the CAT.

Marroquin appealed to the Board of Immigration Appeals ("BIA") and attached new evidence in the form of a letter from his uncle. The BIA affirmed the IJ's rulings on asylum and withholding[1] after concluding that there was no basis to disturb the IJ's rulings. The

---

[1] Marroquin did not appeal the denial of his CAT claim to the BIA, which deemed it waived for that reason. Marroquin also has not mentioned his CAT claim in this Court, so we

3

BIA also declined to consider Marroquin's new letter from his uncle in the first instance on appeal, though it also noted several reasons why the letter does not support Marroquin's claims.

Marroquin petitions for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1) except as discussed herein.

## II.

Marroquin raises essentially three issues on review. First, he challenges the denial of his asylum application as untimely. A noncitizen must apply for asylum within one year of entering the United States, see 8 U.S.C. § 1158(a)(2)(B), unless the noncitizen shows, inter alia, extraordinary circumstances relating to a delay in filing, see 8 U.S.C. § 1158(a)(2)(D). Marroquin conceded before the agency that his asylum application was untimely, but he argued that extraordinary circumstances excused its untimeliness. In particular, he argued that, after he entered the United States, a lawyer whose name he does not remember told him that he should apply for asylum only if immigration authorities detained him in the future. The IJ and BIA rejected that argument, and Marroquin now challenges their rulings.

As the Government argues, however, we lack jurisdiction to review the Attorney General's determinations that an asylum application is untimely and that the untimeliness is not excused by extraordinary circumstances. See 8 U.S.C. § 1158(a)(3); Jarbough v. Att'y Gen., 483 F.3d 184, 188-89 (3d Cir. 2007). We retain jurisdiction to review constitutional

_____

deem it forfeited.

4

claims and questions of law under 8 U.S.C. § 1252(a)(2)(D), see Jarbough, 483 F.3d at 188, but Marroquin has not raised any such claim or question. Instead, he merely repeats the factual argument that he raised before the agency. We lack jurisdiction to consider that factual argument. See id. at 188-89.

Second, Marroquin's brief can be read to argue that the agency's denial of his claim for withholding was not supported by substantial evidence. Marroquin, however, did not provide any evidence compelling the conclusion that the 2011 shooting was politically motivated or that he otherwise likely faces political persecution in the future. See 8 U.S.C. § 1252(b)(4)(B). Marroquin testified that, although he did not know the people who shot him, "it was always because of politics" and "[t]hey always threaten us because of politics." (A.166.) Marroquin did not provide any further details. And although Marroquin provided letters from his mother and three neighbors referencing the 2011 "attack" (A.219, 223, 227, 263), neither those letters nor anything else of record suggests that the shooting was politically motivated or that he faces politically motivated violence in the future. The same is true even considering the letter from Marroquin's uncle that he submitted on appeal to the BIA. (A.48.)[2] As for threats against Marroquin allegedly delivered to his mother, his

---

[2] Marroquin does not mention this letter in his brief, much less argue that the BIA should have considered it or remanded for the IJ to do so. In any event, this letter states that Marroquin participated in "the Political Campaign of 2007-2008," that there was a climate of political violence "in those times" and "in those years," and that Marroquin "suffered an attack"—apparently the 2011 shooting. The letter, however, does not expressly link the shooting to Marroquin's political activities and does not otherwise provide any information suggesting that it was politically motivated or that Marroquin faces politically motivated violence in the future.

mother's letter does not mention those threats even though it post-dates them. Marroquin also did not offer any specific testimony about those threats.[3]

Third, Marroquin argues that the IJ and BIA erred in determining that he failed to corroborate his claim for withholding. In particular, he argues that the IJ failed to apply this Court's three-part corroboration framework. See Luziga v. Att'y Gen., 937 F.3d 244, 255 (3d Cir. 2019); Saravia v. Att'y Gen., 905 F.3d 729, 737 (3d Cir. 2018). The BIA concluded that the IJ properly applied this framework, and we see no basis to disturb its ruling. The IJ asked Marroquin whether he had letters or affidavits from his uncle or others suggesting that the 2011 shooting was related to politics. (A.169-70.) Marroquin responded that he did and that they "should be" in the record. (A.170.) In fact, however, Marroquin had not submitted a letter from his uncle,[4] and the letters from Marroquin's neighbors did not mention his political activities. When the Government later asked Marroquin why, he responded that he did not know, that his uncle's letter "should mention some of that," and that "[t]here should be letters to that effect" in the record. (A.190.) In sum, the IJ inquired

---

[3] Marroquin testified that "some people," who again he did not know, went to see his mother in 2016 and 2018 and were "asking about me" and "running around the house." (A.173.) Later, when the Government's counsel asked Marroquin why his mother's letter did not mention the threats, he responded: "I don't know. I can't tell you. She just told me that someone was around the house, running around. So I can't tell you." (A.192.) Marroquin was similarly unable to explain why his neighbors, whom he testified also knew about the threats, did not mention them in their letters either. (Id.)

[4] As the BIA noted, Marroquin may have been referring to a medical document from Dr. Luis Armando Menendez Corado, who appears to be his uncle. (A.250.) As the BIA also noted, that document merely describes Marroquin's injuries following the 2011 shooting and does not mention Marroquin's alleged political activities or the shooting's allegedly political dimension.

into corroboration, and Marroquin erroneously responded that he had provided it. The record does not reflect that any further corroboration is available. Cf. Saravia, 905 F.3d at 738-39. Nor does Marroquin claim that he could offer any additional evidence if given another chance.

III.

For these reasons, we will dismiss Marroquin's petition for review to the extent that we lack jurisdiction over his argument regarding asylum and will otherwise deny it.