**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2598
_____

IWAYEMI EMMANUEL DAMILOLA OGUNSANYA, a/k/a Iwayemi Ogunsanya,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(Agency No. A201-938-460)
Immigration Judge:  Mirlande Tadal
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 12, 2021
_____

Before:  CHAGARES, JORDAN and SCIRICA, <u>Circuit</u> <u>Judges</u>.

(Filed:  May 18, 2021)

_____

OPINION*
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Iwayemi Emmanuel Damilola Ogunsanya petitions for review of an order of the Board of Immigration Appeals (BIA) affirming an Immigration Judge's (IJ) denial of his application for withholding of removal. For the following reasons, we will deny the petition for review.

I.

We write only for the parties, so our summary of the facts is brief. Ogunsanya is a native and citizen of Nigeria. He first entered the United States in November 2017 on a tourist visa that allowed him to stay in the country for six months. Ogunsanya overstayed his visa, was detained in September 2019, and placed into removal proceedings immediately thereafter. Ogunsanya appeared before the IJ in February 2020, where he conceded his removability and that any application for asylum would be untimely. He did, however, maintain his applications for withholding of removal and protection under the Convention Against Torture.

In support of his application, Ogunsanya claimed he had been persecuted for his Christian beliefs in Nigeria and testified about his fear that he would face religious persecution if he returned there. This testimony centered around two incidents — one in 2015 one in 2017.

In 2015, Ogunsanya testified, he had been proselytizing with members of his church on the streets of Lagos, Nigeria's largest city. It was there that a group of what Ogunsanya described as religiously-motivated Muslims attacked his church group with verbal harassment, stones, and wooden planks. The assault lasted about ten minutes

2

before another group of Christians arrived to dispel the attackers, but in that time, Ogunsanya suffered dislocated joints in his arm. Ogunsanya was hospitalized for several days afterwards.

The 2017 incident occurred when Ogunsanya was a college student living in a hostel about 90 minutes from his home in Lagos. He testified that at around 9:00 p.m. one evening in June, he observed a group of ethnically Fulani Muslim gunmen in the settlement where the hostel was located. The gunmen began shooting Christians in the settlement, so to avoid them, Ogunsanya left the hostel through the back door and hid behind nearby bushes for several hours. He escaped unharmed, but later learned that several villagers had been killed or kidnapped in the attack. Ogunsanya testified that he then remained in Lagos for several months before he left for the United States on a tourist visa. He further testified that he feared anti-Christian persecution because of his middle name "Emmanuel" — which he feared would signal his religious affiliation — as well as his belief that the Nigerian government would not intervene to stop anti-Christian persecution.

The IJ denied Ogunsanya's applications for relief. Although the IJ accepted Ogunsanya's testimony as credible and subjectively reasonable, the IJ nonetheless determined that Ogunsanya had not experienced persecution in the past and did not have an objectively reasonable fear of future persecution. The IJ based this determination on, inter alia, the fact that after the 2015 incident Ogunsanya did not experience any further violence or other harm directed specifically at himself, and that Ogunsanya continued to live in Nigeria for several months without any harm after the 2017 incident. The IJ also

3

considered country conditions in Nigeria, observing that Christians and Muslims reside in Lagos in equal numbers, that ethnically Yoruba Christians like Ogunsanya are a majority group in Nigeria, that Nigeria lacks an official religion, and that Nigeria's constitution prohibits religious discrimination.

Ogunsanya then appealed the IJ's denial of withholding of removal to the BIA. The BIA affirmed the IJ's ruling on largely similar grounds. The BIA further concluded that the 2015 and 2017 attacks Ogunsanya experienced were isolated incidents that did not rise to the level of persecution, that Ogunsanya had been able to live safely in Nigeria, and that country conditions in Nigeria did not reflect a pattern or practice of persecution against Christians.

Ogunsanya then timely filed this petition for review.

II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review the BIA's order. The BIA had jurisdiction to review the IJ's decision under 8 C.F.R. § 1003.1(b)(3). We consider only the BIA's reasoning where the BIA renders an independent assessment of the merits from the IJ, but may review the IJ's decision where the BIA "both adopts the findings of the [IJ] and discusses some of the bases for the [IJ]'s decision." Saravia v. Att'y Gen., 905 F.3d 729, 734 (3d Cir. 2018).

We must uphold factual determinations as to withholding of removal if they are supported by substantial evidence from the record considered as a whole. Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003). This means "we will reverse based on a factual error only if any reasonable fact-finder would be 'compelled to conclude

4

otherwise.'" Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010) (quoting 8 U.S.C. § 1252(b)(4)(B)). We review questions of law de novo. Saravia, 905 F.3d at 734.

III.

Under the Immigration and Nationality Act, a non-citizen is entitled to withholding of removal if he can show by a clear probability that his "life or freedom would be threatened … because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); see A.A. v. Att'y Gen, 973 F.3d 171, 177 (3d Cir. 2020). This showing can be made either via evidence of past persecution — which creates a rebuttable presumption of future persecution — or through a showing that it is "more likely than not" that the non-citizen will be persecuted in the future. A.A., 973 F.3d at 177. In either case, a showing of persecution requires the non-citizen to demonstrate past or future potential harm so severe as to constitute persecution, that such harm occur because of a non-citizen's protected status, and that the harm stems from either a country's government or actors that government is unwilling to control. See Guzman Orellana v. Att'y Gen., 956 F.3d 171, 178 (3d Cir. 2020).

Ogunsanya argues that the BIA erred when it concluded that he did not suffer past persecution. He first claims that the BIA discounted evidence about ongoing religious violence in Nigeria in determining that the 2015 and 2017 attacks were isolated incidents. Moreover, he argues, the BIA lacked substantial evidence to conclude that he only suffered non-severe injuries from the 2015 incident. Ogunsanya then argues that, taking

5

the evidence from Nigeria's conditions and both incidents in the aggregate, the BIA lacked substantial evidence to conclude he was not persecuted.

We disagree. Rather than arbitrarily discount evidence about conditions in Nigeria, the BIA considered the existence of violent clashes between Christians and Muslims in the country. But as shown by its reasoning with respect to Ogunsanya's claims of potential future persecution, it took that evidence in context, noting that religious violence in the country typically occurred in rural areas and the country's northeast — not in or near Lagos. The record does not compel us to conclude that the BIA erred in classifying the 2015 and 2017 attacks as isolated incidents.

The same goes for the BIA's conclusion that Ogunsanya's injuries from the 2015 attack were not so severe as to constitute persecution.[1] While many injuries resulting in hospital stays are severe enough to constitute persecution, see, e.g., Voci v. Gonzales, 409 F.3d 607, 615-16 (3d Cir. 2005), hospitalization alone is far from determinative of an injury's nature, cf. Doe v. Att'y Gen., 956 F.3d 135, 146 (3d Cir. 2020). The BIA reasonably took into account the relatively short length of Ogunsanya's hospital stay and the lack of long-term consequences from his injuries in concluding that they were not

---

[1] Ogunsanya's assertion that "the Board reasoned that the 2015 injury was not severe because it was isolated," Ogunsanya Br. 23, is misplaced. The BIA reasonably discussed the 2015 injury's isolated and non-severe nature together because such incidents often "do not rise to the level of persecution." Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005). But nothing in the BIA's reasoning suggests that the BIA used the severity of Ogunsanya's injuries to determine whether the 2015 attack was an isolated incident.

6

severe, and we are not compelled to conclude otherwise. See Kibinda v. Att'y Gen., 477 F.3d 113, 119-20 (3d Cir. 2007).

Moreover, the BIA reasonably considered the 2015 and 2017 incidents cumulatively. The BIA considered both the time between the incidents and the fact that they were committed by two different groups, suggesting the attacks did not represent a pattern of threats or conduct. Such a record does not compel us to conclude that the BIA erred when it found Ogunsanya was not subjected to past persecution.

Nor are we persuaded that the BIA erred when it determined that Ogunsanya lacked a well-founded fear of future persecution. Although Ogunsanya argues that religious violence is prevalent in Nigeria, he does so based on country condition evidence that the BIA both considered and weighed alongside the rest of the record. The BIA's conclusion that Ogunsanya did not reasonably fear future persecution was grounded in country condition evidence showing religious violence to be concentrated in Nigeria's northeast and rural areas. That evidence suggested that the 2017 attack was as much an isolated incident as the 2015 one. So too did the evidence that the 2017 attack did not target Ogunsanya, as well as the fact that Ogunsanya was able to continue living in Nigeria for several months afterwards without incident. We therefore conclude that the BIA's decision was supported by substantial evidence.

IV.

For the foregoing reasons, we will deny Ogunsanya's petition for review.