**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1607

_____

MAYNOR ANTONIO QUINTANILLA-QUINTANILLA,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency No.  A213-324-161)
Immigration Judge:  Alice Song Hartye

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 30, 2022

_____

Before:  CHAGARES, Chief Judge, SHWARTZ, Circuit Judge, and ROSENTHAL,
District Judge[*]

(Filed: May 3, 2022)
_____

OPINION[†]
_____

---

[*] Honorable Lee H. Rosenthal, Chief District Judge of the United States District Court for the Southern District of Texas, sitting by designation.
[†] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Maynor Antonio Quintanilla-Quintanilla ("Quintanilla") petitions this Court to review a decision by the Board of Immigration Appeals ("BIA") dismissing his appeal from an Immigration Judge's ("IJ") order denying asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition.

I.[1]

Quintanilla, a native and citizen of Honduras, was arrested by border patrol agents, was detained, and appeared pro se before the IJ. On the day of his hearing, he moved for a continuance in order to post bond, but the IJ denied the motion for lack of good cause. He sought asylum and withholding of removal but did not articulate a particular social group ("PSG") to which he belongs. Based on Quintanilla's testimony that members of MS-13 assaulted him after he refused to join their gang, the IJ "provide[d] him some leeway" and assumed that the applicable PSG was "a victim of criminal gang recruitment and retribution because of his refusal to join a gang." Appendix ("App.") R18. The IJ found, however, that Quintanilla's persecutors were not motivated to harm him on account of his membership in a PSG. Instead, the gang members acted with "a criminal intent to have the respondent join their gang, their criminal enterprise." App. R15. The IJ also denied CAT protection.

---

[1] Because we write only for the parties, we recite only those facts pertinent to our decision.

2

Quintanilla obtained counsel and appealed. On appeal, the BIA agreed with the IJ that Quintanilla failed to demonstrate a nexus between that harm and membership in a PSG. Because the lack of nexus was dispositive, the BIA declined to address other arguments pertaining to asylum and withholding of removal. As to CAT protection, the BIA agreed that Quintanilla did not show a particularized risk of future torture in Honduras, the evidence did not show that he could not live in another part of Honduras to avoid torture, and he failed to establish that he more likely than not would be tortured by or with acquiescence of a public official in Honduras. Finally, the BIA denied Quintanilla's motion for a remand to present new evidence concerning country conditions in Honduras. The BIA determined that the proposed evidence existed at the time of his hearing before the IJ, the IJ had not found that Quintanilla failed to corroborate his claim, and the IJ considered the country condition evidence that was in the record. In addition, the BIA concluded Quintanilla was given an opportunity to submit evidence in support of his claims.

Quintanilla timely filed this petition for review.

II.[2]

A.

Quintanilla contends the record supports the existence of three additional PSGs

---

[2] The BIA had jurisdiction over Quintanilla's appeal of the IJ's decision under 8 C.F.R. § 1003.1(b). We have jurisdiction to review the BIA's final order of removal pursuant to 8 U.S.C. § 1252(a)(1). Where the BIA adopts the IJ's findings and discusses the bases for the IJ's decision, we may review both decisions. He Chun Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004).

and, given Quintanilla's pro se status, the IJ had a duty to further develop the record and consider those PSGs. We disagree.

Quintanilla testified before the IJ that the MS-13 gang targeted him "[b]ecause . . . [he] had the right age to work with them because [he] was young enough." App. 482. When he would not join, "they got mad," App. 483, and, about a week later, assaulted and injured him. On this record, it was reasonable for the IJ to consider, as it did, a PSG of "a victim of criminal gang recruitment and retribution because of his refusal to join the gang." App. R18. We see no meaningful difference between the PSG that the IJ considered and Quintanilla's alternative formulation of "young Honduran attempted recruits who have fled criminal organizations." Quintanilla Br. 36. Even if the IJ had considered it, Quintanilla's alternative formulation would fail for the same reason as the PSG that the IJ considered — an absence of nexus between the PSG and the harm he suffered — and Quintanilla has not challenged that finding. See Thayalan v. Att'y Gen., 997 F.3d 132, 137–38 (3d Cir. 2021) (observing that a nexus determination is reviewed under the "highly deferential" substantial evidence standard).

Quintanilla also argues that he "articulated all the necessary facts" to support the existence of two additional PSGs concerning his experiences when he was mistreated and forced to work at a very young age. Quintanilla Br. 28. Quintanilla bore the burden of delineating the PSG at issue. See Matter of W-Y-C- & H-O-B-, 27 I. & N. Dec. 189, 191 (BIA 2018) ("[I]t is an applicant's burden to specifically delineate her proposed social group . . . ."). A PSG not explicitly articulated before the IJ is forfeited on appeal to the BIA. Id. at 191–92.

4

Although Quintanilla did not delineate these additional PSGs to the IJ, he contends that the forfeiture rule should not apply. He advocates a rule that would place the burden on the IJ to identify and develop all potential PSGs for pro se petitioners. We need not decide whether to adopt such a rule, however, because the record is devoid of evidence reasonably suggesting Quintanilla is a member of these additional PSGs, even without regard to whether they are cognizable.

Quintanilla's credible fear interviewer identified a PSG of "Honduran children viewed as property by virtue of their position within a domestic relationship," App. 622, and noted forced labor and starvation in Quintanilla's youth. Quintanilla argues that these facts also show his membership in the PSG of "Honduran children unable to leave their domestic relationships." Quintanilla Br. 19. But Quintanilla's asylum application described a fear of gang violence, not a domestic relationship.[3] Quintanilla's testimony before the IJ was clear and unequivocal that he does not fear anyone in Honduras besides MS-13. The IJ asked twice whether Quintanilla feared anything in Honduras apart from gangs, and he never expressed a fear of a domestic relationship. To the extent an IJ has a duty to develop an applicant's testimony, see Toure v. Att'y Gen., 443 F.3d 310, 325 (3d Cir. 2006), the IJ fulfilled that duty here. Quintanilla's testimony does not reasonably suggest additional claims based on membership in a PSG comprising those who are

---

[3] Quintanilla testified that he left school in third grade to work on a farm. He stated that he was paid poorly and was mistreated, but he left that situation without incident years before he fled Honduras.

viewed as property by virtue of their position within a domestic relationship or unable to leave their domestic relationships.

B.

Quintanilla next challenges the IJ's denial of his CAT claim, arguing that the IJ failed to adequately appreciate the country conditions in Honduras when assessing whether the police would be willfully blind to his torture. This claim lacks merit.

The agency determined that Quintanilla failed to establish that he faced a particularized risk of torture in Honduras. See In re S-V-, 22 I. & N. Dec. 1306, 1313 (BIA 2000) ("[T]he existence of a consistent pattern of gross, flagrant, or mass violations of human rights in a particular country does not, as such, constitute a sufficient ground for determining that a particular person would be in danger of being subjected to torture upon his or her return to that country."). Among other things, the BIA observed that Quintanilla did not show that he could not relocate to another part of Honduras to avoid harm and that the record evidence of gang violence in Honduras did not establish a complicit relationship between gang violence and law enforcement. Quintanilla has not demonstrated that any reasonable factfinder would be compelled to reject those findings. See Wang v. Ashcroft, 368 F.3d 347, 350 (3d Cir. 2004).

C.

Quintanilla claims that the BIA erred in denying his motion to accept evidence. Because it is akin to a motion to reopen, the BIA's decision is reviewed for abuse of discretion and will be reversed only if arbitrary, irrational, or contrary to law. See Filja v.

6

Gonzales, 447 F.3d 241, 251 (3d Cir. 2006). The BIA did not abuse its discretion in denying the motion.

Quintanilla relies on Saravia v. Attorney General, 905 F.3d 729 (3d Cir. 2018), to argue that the IJ had a duty to articulate the law, specify what evidence Quintanilla needed to meet his burden, and provide an opportunity for him to substantiate his claims. Saravia applies if an IJ determines that an applicant has insufficiently corroborated his claims and requires the IJ to provide notice and an opportunity to provide corroboration. Id. at 734. Yet the IJ did not deny relief due to a lack of corroboration so, as the BIA correctly observed, Saravia does not apply. Moreover, the BIA's conclusions that the evidence he wished to submit was previously available and that it would be unlikely to change the outcome of the case are not arbitrary, irrational, or contrary to law.

Relatedly, Quintanilla argues that the IJ wrongfully denied a continuance to allow him "to pay the bond so that he could be released and have access to the evidence he needed to substantiate his claim." Quintanilla Br. 52 n.4. The IJ denied a continuance for lack of good cause. Quintanilla did not challenge the good cause determination before the BIA. Accordingly, this claim is unexhausted, and we cannot consider it. See Lin v. Att'y Gen., 543 F.3d 114, 120–21 (3d Cir. 2008).

III.

For the foregoing reasons, we will deny the petition for review.