**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 21-3260 & 22-2887
(consolidated)
_____

OMAR ALBERTO STEELE,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097-513-211)
Immigration Judge: Alice Song Hartye
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 18, 2023

Before: SHWARTZ, BIBAS, and MONTGOMERY-REEVES, Circuit Judges

(Opinion filed August 23, 2023)
_____

OPINION*
_____

PER CURIAM

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Omar Alberto Steele, proceeding pro se, seeks review of decisions of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") denial of his application for deferral of removal, and denying his subsequent motion to reopen. For the reasons that follow, we will deny the petitions.

I.

Steele entered the United States as a visitor from Panama in August 1998 and did not depart. In 2013, Steele was convicted of federal controlled substance offenses and sentenced to 120 months of incarceration. Thereafter, Steele was charged with being removable as, inter alia, a noncitizen convicted of an aggravated felony, see 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(B) & (U), and a noncitizen convicted of a controlled substance offense, see 8 U.S.C. § 1227(a)(2)(B)(i). At a hearing before the IJ, Steele, through counsel, conceded the charges and his ineligibility for asylum or withholding of removal because of his criminal convictions, but sought deferral of removal under the Convention Against Torture ("CAT").

Steele's application for CAT relief revolved around his fear of Alberto Barrera Candelaria ("Barrera"). Steele identified Barrera as a convicted murderer and drug lord who escaped from Panamanian custody and was eventually apprehended in the United States. Steele asserted that Barrera believed Steele was responsible for his apprehension and threatened Steele and his family as a result. Steele testified that he believed Barrera killed his mother, who was murdered in Panama in 2010, shortly after Barrera's deportation to the country. While a neighbor witnessed the murder and was interviewed by detectives, she was unable to identify the shooter. Steele also testified that Barrera's

2

brother, Enrique Barrera, was a government official in Panama, but that he was unsure what position the brother held in the government.

The IJ denied relief. Although she found Steele's testimony to be credible, the IJ determined, inter alia, that there was no "objective evidence" to support Steele's allegation that Barrera was responsible for his mother's murder, and that the evidence was insufficient to establish that Barrera was in Panama or would be aware of Steele's return. IJ Op. at 8-9. The IJ acknowledged that Steele "received numerous threats in the United States," id. at 8, but concluded that, even if Steele could establish that Barrera was present in Panama and would target him, the record did not support a finding that the Panamanian government would acquiesce to harm by Barrera. Id. at 9.

Through counsel, Steele filed a notice of appeal and indicated that a separate written brief would be filed. However, counsel never filed a brief in support of the appeal. After considering the arguments raised in the notice of appeal, the BIA adopted and affirmed the IJ's decision, agreeing that Steele had not shown that it was more likely than not that he would be tortured or that a government official would consent or acquiesce to any torture that he would face. See BIA Op. at 2. Specifically, the BIA rejected Steele's argument that his credible testimony should have been sufficient to establish his claim and found no clear error in the IJ's determination "that the record does not establish that the man [Steele] fears is the same man that killed his mother." Id. The BIA further determined that neither the identification of Barrera's brother as a government official, nor the Panamanian government's "inability to identify [Steele's] mother's killer," were sufficient to show "that government officials in Panama [] would

3

condone or acquiesce to the torture that [Steele] fears." Id. at 2-3. Steele filed a timely pro se petition for review, which was docketed at C.A. No. 21-3260.

Subsequently, Steele filed a pro se motion to reopen with the BIA, asserting ineffective assistance of counsel as well as newly acquired evidence. Among other allegations, Steele asserted that his counsel was ineffective for failing to pursue a possible claim to U.S. citizenship. The BIA denied his motion. Steele filed another pro se petition for review, which was docketed at C.A. No. 22-2887. His petitions are consolidated for disposition.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). Because the government lacks the authority to remove a person unless he or she is a noncitizen, see Ng Fung Ho v. White, 259 U.S. 276, 284 (1922), we turn first to Steele's assertion of U.S. citizenship. This Court generally has jurisdiction to adjudicate nationality claims in removal proceedings. 8 U.S.C. § 1252(b)(5). If the claim presents no genuine issue of material fact, the Court can decide the issue as a matter of law; otherwise, the Court transfers the proceedings to the District Court for an evidentiary hearing. See id. In determining whether a genuine issue of material fact is presented, we employ principles of summary judgment practice. See Joseph v. Att'y Gen., 421 F.3d 224, 229-30 (3d Cir. 2005). "Accordingly, … the party seeking what amounts to summary judgment, 'bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law.'" Id. at 230 (quoting Rodriquez v. New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995)).

4

Although Steele entered the United States on a visitor's visa, reported Panamanian citizenship, and conceded through counsel before the IJ to being a noncitizen, Steele now claims citizenship based on 8 U.S.C. § 1403(a). Section 1403(a) provides that "any person born in the Canal Zone on or after February 26, 1904, and … whose father or mother or both at the time of the birth of such person was or is a citizen of the United States, is declared to be a citizen of the United States."

Steele has not presented any evidence of citizenship that raises a genuine issue of material fact. As evidenced by his birth certificate, see A.R. at 49,[1] Steele was born in the Canal Zone in 1970. However, his birth certificate identifies both parents as Panamanian citizens. While Steele asserts that his father was a U.S. citizen at the time of his birth, he provides no evidence to support his claim other than an assertion that his "mother told him that [h]is father obtain[ed] his naturalization right around 1967." C.A. No. 21-3260, ECF No. 15 at 4. Even accepting as true that his mother made such a statement to him, the fact of the statement alone is insufficient to raise a genuine issue of material fact.[2] Without more, Steele has no persuasive claim to U.S. citizenship.

---

[1] All references to the agency record are to the record filed in C.A. No. 22-2887 at ECF No. 6.

[2] The notice to appear issued to Steele in connection with his deportation proceedings noted that Steele previously made a claim to U.S. citizenship "based on the belief his father is a naturalized USC, acquiring citizenship prior to his birth, due to his fathers [sic] employment in the American Canal Zone in Panama." A.R. at 485. As a result of that claim, "[a] request was sent to the Office of Principal Legal Advisor (OPLA), Philadelphia, PA (York), for a United States Citizen Claim memorandum to be conducted. OPLA-Philadelphia concluded that STEELE had not made a probative claim to U.S. citizenship." Id.

We turn next to Steele's challenge to the agency's determination that he failed to establish his eligibility for deferral of removal under the CAT. Because Steele is removable by virtue of his conviction for an aggravated felony, our jurisdiction is generally limited to questions of law and constitutional claims, see 8 U.S.C. § 1252(a)(2)(D), although we retain jurisdiction to review factual challenges to CAT decisions, see Nasrallah v. Barr, 140 S. Ct. 1683, 1688 (2020). We review the agency's findings under the substantial-evidence standard pursuant to which "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. at 1692 (citation omitted). Because the BIA affirmed and adopted the IJ's opinion, we review both the IJ's and the BIA's opinions. See Ordonez-Tevalan v. Att'y Gen., 837 F.3d 331, 340-41 (3d Cir. 2016).

To establish a claim for deferral of removal, Steele was required to demonstrate, through objective evidence, "that it is more likely than not" that he will be tortured if removed. See 8 C.F.R. § 1208.16(c)(2), § 1208.17(a); § 1208.18(a)(1); Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002). The determination as to whether a petitioner has met his burden involves the two-fold inquiry set forth in Myrie v. Attorney General, 855 F.3d 509, 516 (3d Cir. 2017): (1) "whether an applicant has met the burden of establishing that it is more likely than not [that he] would be tortured if removed"; and (2) "whether public officials will acquiesce in the likely treatment." Quinteros v. Att'y Gen., 945 F.3d 772, 786 (3d Cir. 2019) (citation and internal quotation marks omitted).

In considering the second prong, the IJ must first "make[] a factual finding . . . as to how public officials will likely act in response to the harm the petitioner fears," and

6

next "assess[] whether the likely response from public officials qualifies as acquiescence under the governing regulations." Myrie, 855 F.3d at 516. "For purposes of CAT claims, acquiescence to torture requires only that government officials remain willfully blind to torturous conduct and breach their legal responsibility to prevent it." Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 70 (3d Cir. 2007).

Among other findings, the IJ concluded that, even if Steele was able to establish that it is more likely than not that he would be tortured if removed, IJ. Op. at 9, Steele is not eligible for deferral of removal under the CAT because he failed to demonstrate that Panamanian authorities "would acquiescence or be willfully blind to any perspective [sic] torture." IJ Op. at 9. This determination is supported by substantial evidence. As noted by the IJ, and consistent with the 2020 Panama Country Report considered by the Court, Panama has a functioning government, including functioning law enforcement, police, and courts. Further, the record before the IJ lacked evidence showing that Panamanian authorities would acquiesce in, or be willfully blind to, the torture feared by Steele. While Steele asserted that Barrera's brother is an elected government official, nothing in the record before the IJ suggested that the brother had "a requisite level of authority to control or direct government officials in Panama or police such that they would condone or acquiescence [sic] in any harm that Barrera may do to respondent if returned." Id.[3]

---

[3] To the extent that Steele attempts to present new evidence or expand on his testimony, we may not consider such evidence in reviewing the agency's final order of removal. See 8 U.S.C. § 1252(b)(4)(A) (stating that a petition for review shall be decided "only on the administrative record on which the order of removal is based").

Steele disagrees with the IJ's conclusions regarding country conditions, and points to the lack of an arrest in his mother's murder as evidence of acquiescence. However, as demonstrated by Steele's own testimony and submissions, law enforcement conducted an investigation and interviewed at least one witness who was unable to identify the gunman. See A.R. at 378, 419; IJ Op. at 8 ("The neighbor who witnessed the murder was unable to observe who the shooter was."). As such, his argument does not change our conclusion that substantial evidence supports the agency's ruling.[4]

We turn next to Steele's challenge to the denial of his motion to reopen, which we review for abuse of discretion. See Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006). Under this standard, we "will not disturb the BIA's decision unless it is found to be arbitrary, irrational, or contrary to law." Liem v. Att'y Gen., 921 F.3d 388, 395 (3d Cir. 2019) (internal quotation marks and citations omitted).

Steele sought reopening on the grounds of ineffective assistance of counsel and newly available evidence. See A.R. at 137. The BIA denied the motion to reopen as untimely, and declined to reopen sua sponte pursuant to 8 C.F.R. § 1003.2(a) because Steele failed to "allege[] or otherwise establish[] that the untimeliness of the present

---

[4] As the record is insufficient to establish government acquiescence in the feared harm, we need not consider Steele's arguments that the IJ, in considering the first prong of the Myrie analysis, "repeatedly faulted him for the lack of corroboration evidence" without first conducting the three-part inquiry required by Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001). 3d Cir. ECF No. 15 at 9; see also Saravia v. Att'y Gen., 905 F.3d 729, 737 (3d Cir. 2018). The IJ's conclusions as to the second Myrie prong are independent of any corroboration analysis and, as discussed above, are supported by substantial evidence.

motion is attributable to the ineffective assistance of his former counsel." BIA Order. at 2. The BIA noted that, even if it were to consider the motion on the merits, it would decline to reopen for various reasons, including that the allegations against counsel were "vague and conclusory," and that Steele failed to "establish[] prejudice." Id.[5] The BIA further determined that the affidavit from Smith "essentially reiterates the same claim for CAT protection as that which was presented to the Immigration Judge," and did not establish "a material change in Panamanian country conditions." Id.

---

[5] Steele asserted that his counsel was ineffective because she "did not explain to me what evidence would be appropriate for the court and did not work with me on obtaining such evidence, which led to lack of corroboration," and because she "failed to submit an appeal brief on my behalf to the BIA." A.R. at 142. Steele also asserted that counsel "dismissed my claims for U.S. citizenship although I was born in Panama in 1970 on a U.S. military base." A.R. at 148. The BIA did not abuse its discretion in concluding that Steele could not show prejudice based on those allegations. To the extent that we may consider Steele's ineffectiveness claims in the first instance, see Santos-Zacaria v. Garland, 143 S. Ct. 1103, 1120 (2023) (finding that "[s]ection 1252(d)(1)'s exhaustion requirement is not jurisdictional and does not oblige a noncitizen to seek discretionary review"), we come to the same conclusion.

Rather than summarily dismiss the appeal for failure to file a brief, see 8 C.F.R. § 1003.1(d)(2)(E), the BIA considered the arguments raised in the notice of appeal in reviewing the IJ's opinion and found no error. As already discussed, Steele has not established a viable claim to citizenship. As such, he cannot show prejudice as a result of counsel's alleged failure to pursue such a claim. As noted by the BIA, Steele failed to establish "that the failure to file a brief in his case affected the adjudication of the appeal" or specify "any evidence that, had it been submitted, would have altered the result in this case." BIA Or. At 2. An undated affidavit from his friend reasserted the same general information previously presented to the IJ, and was based on "word on the street" as opposed to first-hand knowledge. And the information regarding Barrera's brother's specific position as Regional Director of the Ministry of Labor and Labor Development is insufficient to show that he would acquiesce to the harm feared by Steele or be in a position to influence the actions of the police or judiciary to turn a blind eye to any threats.

We discern no abuse of discretion in the BIA's denial of Steele's motion to reopen. The BIA correctly determined that Steele's motion to reopen was untimely, and Steele does not meaningfully dispute this conclusion on appeal. As a general rule, a motion to reopen must be filed within ninety days of the date of the final administrative decision. 8 U.S.C. § 1229a(c)(7)(A), (C)(i). The BIA's final decision on removal was rendered on November 10, 2021. Steele's motion to reopen was filed, at the earliest, on April 26, 2022, well outside the allowable ninety-day time frame. While the deadline for motions to reopen may be equitably tolled on the basis of ineffective assistance of counsel, equitable tolling is an extraordinary remedy, and the alien must have acted with due diligence. See Mahmood v. Gonzales, 427 F.3d 248, 251-53 (3d Cir. 2005). As noted by the BIA, Steele failed to establish that his failure to file his motion to reopen in a timely manner was in any way attributable to his counsel's ineffectiveness. Nor has he shown that he acted with due diligence in seeking to reopen. Thus, he has not shown that he was entitled to equitable tolling.[6]

Accordingly, we will deny the petitions for review.

---

[6] To the extent Steele argues that he met an exception to the filing deadline because he established a material change in country conditions, we find this argument to lack merit for substantially the same reasons set out in the Government's brief. See C.A. No. 22-2887, ECF No. 11 at 9-10.