**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3213
_____

JOSE ALFRED RAMOS JIMENEZ;
SANDRA NOHEMY ROJAS MEJIA; J. A. R.R.,
Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency Nos. A220-991-125; A220-991-126; A220-991-127)
Immigration Judge: Jason Pope
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 10, 2025
_____

Before: RESTREPO, BIBAS, and CHUNG, Circuit Judges

(Filed: August 15, 2025)
_____

OPINION[*]
_____

**CHUNG**, Circuit Judge.

---

[*]This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jose Alfred Ramos Jimenez and his family[1] petition for review of a final order of removal issued by the Board of Immigration Appeals ("BIA"), affirming the Immigration Judge's ("IJ") denial of Jimenez's applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons presented below, we will deny the petition.

I.     BACKGROUND[2]

Jimenez is a native and citizen of Honduras. His claims stem from a series of phone calls from (apparently) the same person extorting him for money while he lived in Honduras. In November 2020, Jimenez received the first phone call from the unknown caller, asking for 100,000 lempiras (about $4,200 USD) or else "they" would kill him, his partner, and his family. Jimenez did not take any action as he thought the phone call was a joke. Jimenez received the second phone call in January 2021, asking for 100,000 lempiras as before. This time, Jimenez gave the caller half the money requested. The next call came in March 2021, asking for the rest. Jimenez told the caller he had given them all the money he had. Out of fear, Jimenez then moved his family two hours away to live with his grandmother. After seeing a car surveilling his grandmother's residence a month later, Jimenez and his family moved again to stay with his partner's sister. Jimenez received the last phone call in July 2021. The caller demanded the rest of the

---

[1]     The petitioners are Jimenez, his partner, and their minor child. Each petitioner filed their own application for asylum before the IJ and BIA, and all applications are predicated on the same set of facts. While we refer to "Jimenez" throughout, our decision applies equally to all petitioners.

[2]     Because we write for the parties, we recite only the facts pertinent to our decision.

2

money, threatened the lives of Jimenez and his family, and stated again that Jimenez and his family would be found wherever they went.

Following that call, Jimenez decided to move his family to the United States. Jimenez and his family entered the United States without inspection on August 3, 2021. The Department of Homeland Security initiated removal proceedings against Jimenez on August 25, 2021. On March 21, 2022, the IJ denied Jimenez's applications for asylum, withholding of removal, and CAT protection. On July 10, 2024, the BIA affirmed the IJ and entered a final order of removal. Jimenez timely appealed.[3]

II.     DISCUSSION[4]

_____

[3]     Jimenez filed his petition for review in the Second Circuit on August 5, 2024. He filed an unopposed motion to transfer to the Third Circuit on August 15, 2024, and the Second Circuit granted his motion on November 26, 2024.

[4]     The IJ had jurisdiction pursuant to 8 C.F.R. § 1208.2, the BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction to review a final order of the BIA pursuant to 8 U.S.C. § 1252(a). See Hernandez Garmendia v. Att'y Gen., 28 F.4th 476, 481–82 (3d Cir. 2022). "[W]here the [BIA] both adopts the findings of the Immigration Judge and discusses some of the bases for the Immigration Judge's decision, we have authority to review the decisions of both the Immigration Judge and the [BIA]" though "[w]e may only consider the reasons provided by the" BIA. Saravia v. Att'y Gen., 905 F.3d 729, 734 (3d Cir. 2018) (internal quotations and brackets omitted). "We review the agency's factual findings under the highly deferential substantial-evidence standard: The agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Sunuwar v. Att'y Gen., 989 F.3d 239, 247 (3d Cir. 2021) (internal quotations omitted). We also review for substantial evidence the mixed questions of law and fact of the BIA's application of the past persecution standard to the facts and determination of whether particular facts amount to torture and whether a group constitutes a cognizable social group. Cf. Wilkinson v. Garland, 601 U.S. 209, 212 (2024) (noting that the application of a "statutory legal standard" "to an established set of facts is a quintessential mixed question of law and fact" and is reviewable); id. at 217, 225 ("the application of the exceptional and extremely unusual hardship standard to a given set of facts is" a mixed question that is primarily factual and is reviewable under a "deferential" standard); Wilkinson v. Att'y Gen., 131 F.4th 134,

3

Jimenez argues that the BIA erred in determining that Jimenez was ineligible for asylum, withholding of removal, and relief under the CAT.

"An asylum applicant must demonstrate either past persecution or a well-founded fear of future persecution. In order to establish eligibility on the basis of past persecution, an applicant must show[,]" among other things, that he or she faced, or will face, persecution "on account of a statutorily protected ground[.]" Voci v. Gonzales, 409 F.3d 607, 613 (3d Cir. 2005) (internal quotations and citations omitted). To be eligible for withholding of removal, an applicant must similarly establish, among other things, that "his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." Saravia, 905 F.3d at 735 (internal quotations omitted). This standard "is higher than the standard for asylum." Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 348 (3d Cir. 2008) (internal quotations and citations omitted). "Thus, an applicant who cannot meet the standard for asylum will necessarily be unable to meet the standard for withholding of removal." Id. at 348–49. Finally, to obtain relief under the CAT, "a noncitizen must show that, if removed to the proposed country, they will [more likely than not] be tortured by or with the consent or acquiescence of a public official." Hernandez Garmendia, 28 F.4th at 484 (citing 8 C.F.R. § 1208.16(c)(2), 1208.18(a)(1)).

---

142 (3d Cir. 2025) (determining that the proper standard of review for "exceptional and extremely unusual hardship" is substantial evidence).

The BIA found that the IJ correctly determined that Jimenez's proposed particular social group "affluent Hondurans" was not cognizable.[5] Substantial evidence supports this conclusion. For a social group to be cognizable, it must be "composed of members who share a common, immutable characteristic," "defined with particularity," "and socially distinct within the society in question." Herrow v. Att'y Gen., 93 F.4th 107, 119 (3d Cir. 2024). Affluence, however, is not immutable as a person's wealth can change, nor is affluence "so fundamental to identity or conscience that it should not be expected to be changed." In re A-M-E- & J-G-U-, 24 I. & N. Dec. 69, 71–74 (BIA 2007) (rejecting the proposed social group "affluent Guatemalans" and listing cases establishing that "in the absence of evidence to suggest other motivations, evidence that the perpetrators were motivated by a victim's wealth will not support a finding of persecution." (overruled on other grounds)); see Herrow, 93 F.4th at 119 ("A characteristic is immutable if it cannot be changed[.]"). A social group must also be clearly defined with particularity, meaning the group has "discrete and definable boundaries that … provide a clear standard for determining who is a member." S.E.R.L. v. Att'y Gen., 894 F.3d 535, 552 (3d Cir. 2018) (cleaned up). Jimenez testified that he had "good economic stability" and would be a member of the group "affluent

---

[5] The IJ also concluded that Jimenez had not established he was persecuted on account of his nationality or imputed political opinion. Additionally, the IJ determined that Jimenez could not establish he was persecuted on account of his other proposed social group, "victims of human trafficking," because the trafficking occurred in Mexico and would not pertain to their claim of harm in Honduras. AR 124. Jimenez did not challenge these findings before the BIA, nor does he challenge them here.

5

Hondurans," although he would not be considered "rich-rich" in Honduras. This definition of "affluent Hondurans" is so vague that it provides no standard for inclusion in the group. JA 17; Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582, 600 (3d Cir. 2011). For the same reason, "affluent Hondurans" is not socially distinct—the contours of the group are so vague that it is not recognizable in Honduras. See S.E.R.L., 894 F.3d at 553 (noting that the social distinction inquiry asks whether the Petitioner's "home society actually does recognize that group as being a 'distinct' and identifiable group."). In sum, the IJ's determination that the characteristic of being an "affluent Honduran" is not immutable, particular, or socially distinct, and its resulting conclusion that Jimenez has not identified a cognizable social group, is supported by substantial evidence.

Even if Jimenez had identified a particular social group, the BIA perceived no clear error in the IJ's finding that the unknown caller targeted Jimenez, not because of his social group, but rather for the caller's financial gain. Substantial evidence supports this determination. The caller repeatedly sought money and the record contained no evidence of any other motive. Moreover, Jimenez admitted that he never knew who made the calls or why the caller targeted him specifically. AR 209; see Gonzalez-Posadas v. Att'y Gen., 781 F.3d 677, 685–86 (3d Cir. 2015).

Accordingly, substantial evidence supports the BIA's conclusion that Jimenez "failed to prove eligibility for asylum" which means "that the more stringent standard for withholding of removal has also not been met." Hernandez Garmendia, 28 F.4th at 484 (citing Shardar v. Ashcroft, 382 F.3d 318, 324 (3d Cir. 2004)).

6

Jimenez's Convention Against Torture claim also fails. Here, the BIA adopted the reasoning of the IJ, so we review the underlying reasoning of that decision. Voci, 409 F.3d at 612–613. The BIA's affirmance of the IJ's denial of CAT protection is supported by substantial evidence. "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 208.18(a)(2); See Manuel-Soto v. Att'y Gen., 121 F.4th 468, 472 (3d Cir. 2024). Substantial evidence supports the conclusion that the threats and extortion Jimenez experienced do not amount to torture.[6] We further conclude that the IJ's finding that Jimenez would not be subject to torture if he returned to Honduras is supported by substantial evidence. The IJ cited evidence that Jimenez did not continue to receive threats while in the United States, and that no members of his family with whom he stayed are being threatened in Honduras. In light of the above, the BIA did not err in concluding that Jimenez is not eligible for relief under the CAT.

III.  CONCLUSION

For the foregoing reasons, we will deny the petition.

---

[6]  Jimenez also included information regarding his assault while traveling through Mexico to the United States. He does not argue that the assault was part of the alleged torture in Honduras, nor can he. "CAT prohibits removal of a noncitizen to a country where the noncitizen likely would be tortured." Nasrallah v. Barr, 590 U.S. 573, 580 (2020). We therefore do not address that evidence here.